# Supreme Court of Florida

_____

No. SC14-193
_____

**ANGELO ATWELL,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[May 26, 2016]

PARIENTE, J.

Angelo Atwell was sixteen years old when, in August 1990, he committed armed robbery and first-degree murder. Under the statute then in effect, Atwell was sentenced for the first-degree murder to a mandatory term of life imprisonment, with the possibility of parole after twenty-five years, and was sentenced to life imprisonment without the possibility of parole for the armed robbery.

As mandated by the existing statutory scheme, Florida's parole process requires "primary weight" to be given to the "seriousness of the offender's present offense and the offender's past criminal record." See § 947.002, Fla. Stat. (2015).

Under this statutory scheme, twenty-five years after Atwell was sentenced, the Commission on Offender Review conducted a parole hearing and set Atwell's presumptive parole release date, which is the earliest date he may be released from prison as determined by objective parole guidelines, for the year 2130—one hundred and forty years after the crime and far exceeding Atwell's life expectancy. Thus, while technically Atwell is parole-eligible, it is a virtual certainty that Atwell will spend the rest of his life in prison.

The issue we consider is whether Atwell's sentence for first-degree murder is constitutional, in light of the United States Supreme Court's decision in Miller v. Alabama, 132 S. Ct. 2455, 2469 (2012), which held that the Eighth Amendment "forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." We conclude that Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of Atwell's juvenile status at the time of the murder, as required by Miller, and that his sentence, which is virtually indistinguishable from a sentence of life without parole, is therefore unconstitutional.

Our conclusion is supported by three factors. First, it is consistent with this Court's precedent involving juvenile sentencing cases that has followed the spirit of the United States Supreme Court's recent juvenile sentencing jurisprudence, rather than an overly narrow interpretation. For example, this Court in Henry v.

State, 175 So. 3d 675 (Fla. 2015), recently rejected a similarly narrow reading as the one the State offers of Miller here, in concluding that the underlying premise of the Supreme Court's related decision in Graham v. Florida, 560 U.S. 48 (2010), controlled over a reading that would have confined the scope of Graham to only sentences denominated as "life" imprisonment.

Second, our conclusion is consistent with Miller itself, which emphasized that sentencing courts must take into account "how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison"—factors Florida's parole process entirely fails to recognize. Miller, 132 S. Ct. at 2469. Indeed, the Supreme Court even explicitly noted that its decision "requires factfinders . . . to take into account the differences among defendants and crimes." Id. at 2469 n.8.

This requirement of individualized sentencing considerations for juvenile offenders was reiterated by the Supreme Court in its recent decision in Montgomery v. Louisiana, 136 S. Ct. 718 (2016), which emphasized that Miller requires prisoners sentenced as juveniles "must be given the opportunity to show their crime did not reflect irreparable corruption; and, if it did not, their hope for some years of life outside prison walls must be restored." Montgomery, 136 S. Ct. at 736-37. In Montgomery, the Supreme Court held that States would not necessarily have to "relitigate sentences, let alone convictions" to comply with

Miller but could parole certain juvenile offenders "whose crimes reflected only transient immaturity—and who have since matured," so that those juvenile offenders "will not be forced to serve a disproportionate sentence in violation of the Eighth Amendment." Id. at 736.

Although the pre-1994 first-degree murder statute under which Atwell was sentenced provided for parole eligibility, it remained a mandatory sentence that treated juveniles exactly like adults and precluded any individualized sentencing consideration. The current parole process similarly fails to take into account the offender's juvenile status at the time of the offense, and effectively forces juvenile offenders to serve disproportionate sentences of the kind forbidden by Miller.

Finally, our conclusion is consistent with the legislative intent in Florida after the issuance of the Graham and Miller decisions. Rather than offer parole as a means of complying with the principles established by the Supreme Court, the Florida Legislature chose instead to enact a wholly new and distinct sentencing framework for juvenile offenders, offering term-of-years sentencing options for trial courts and providing for subsequent judicial review of lengthy sentences. See Horsley v. State, 160 So. 3d 393, 407 (Fla. 2015). Our conclusion that Miller is implicated in this case accordingly aligns both with this Court's holding that Miller applies retroactively—a result the United States Supreme Court recently reached in Montgomery—and with our determination in Falcon v. State, 162 So. 3d 954 (Fla.

2015), that the "patent unfairness" of treating similar juvenile offenders differently "based solely on when their cases were decided" must be remedied. Id. at 962.

For these reasons, and all other reasons fully explained in this opinion, we quash the Fourth District Court of Appeal's underlying decision upholding Atwell's sentence for first-degree murder. See Atwell v. State, 128 So. 3d 167, 169 (Fla. 4th DCA 2013). We remand this case for resentencing on the first-degree murder count in conformance with chapter 2014-220, Laws of Florida, which has been codified in sections 775.082, 921.1401, and 921.1402 of the Florida Statutes. See Horsley, 160 So. 3d at 395. Under that sentencing framework, the sentencing court is authorized to impose a sentence from 40 years to life imprisonment after considering youth-related sentencing factors. Importantly, unlike the parole system in place, the juvenile offender's sentence is reviewed by a trial judge after 25 years, who then determines whether a sentence modification is warranted after reviewing, among other factors, the juvenile offender's youth and its attendant characteristics at the time of the offense, the opinion of the victim or the victim's next of kin concerning the release of the juvenile offender from prison, and whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing. But see § 921.1402(2)(a), Fla. Stat. (2015) (specifying certain

- 5 -

instances where review is not authorized, such as when the juvenile offender was previously convicted of a separate criminal offense).

## FACTS AND BACKGROUND

In 1992, Atwell was convicted of first-degree murder and armed robbery. He was sixteen years old at the time of the offenses, which occurred on August 30, 1990. As for the armed robbery, he was sentenced to life without the possibility of parole.[1]

As for the murder conviction, the only sentencing options under the sentencing scheme then in effect were either death or life in prison with the possibility of parole after twenty-five years. Specifically, the relevant Florida statute for first-degree murder then provided:

> A person who has been convicted of a capital felony shall be punished by life imprisonment and shall be required to serve no less than 25 years before becoming eligible for parole, unless the proceeding held to determine sentence according to the procedure set forth in section 921.141 results in findings by the court that such person shall be punished by death, and in the latter event such person shall be punished by death.

---

1. Atwell's mandatory life sentence for armed robbery is clearly unconstitutional under Graham but is not the subject of this appeal. As the Fourth District Court of Appeal stated, Atwell did not raise the Graham claim in the trial court. See Atwell, 128 So. 3d at 169. Because an illegal sentencing claim must first be presented to the trial court, we do not address Atwell's claim on appeal that his life without parole sentence for armed robbery is unconstitutional. We note, however, that Atwell may file a proper motion in the trial court, under Florida Rule of Criminal Procedure 3.800, to seek correction of this sentence.

§ 775.082(1), Fla. Stat. (1989).[2]  This statute was later amended by chapter 94-228, section 1, Laws of Florida, which became effective May 25, 1994, to eliminate parole.  The post-1994 statute provided instead for a sentence of either death or life without the possibility of parole for a first-degree murder conviction.[3]

In February 2013, Atwell moved for postconviction relief, contending that his life sentence constituted cruel and unusual punishment under <u>Miller</u>.  The trial court summarily denied Atwell's motion, concluding both that <u>Miller</u> did not apply retroactively—a conclusion this Court has since rejected—and that Atwell's sentence was not unconstitutional under <u>Miller</u> because he is eligible for parole.

---

2.  Because Atwell's sentencing occurred prior to the time at which the death penalty was declared unconstitutional for juveniles, a penalty phase was held.  By a vote of seven to five, the jury recommended a life sentence.

3.  The post-1994 statute, which was in effect until the recent legislative changes in response to <u>Graham</u> and <u>Miller</u> became effective on July 1, 2014, provided:

> A person who has been convicted of a capital felony shall be punished by death if the proceeding held to determine sentence according to the procedure set forth in s. 921.141 results in findings by the court that such person shall be punished by death, otherwise such person shall be punished by life imprisonment and:

> (a)  If convicted of murder in the first degree or of a capital felony under s. 790.161, shall be ineligible for parole.

§ 775.082(1)(a), Fla. Stat. (Supp. 1994).

On appeal, the Fourth District affirmed the trial court's denial of Atwell's motion for postconviction relief, holding that Atwell "did not establish an illegal sentence that can be corrected at any time" under the Florida Rules of Criminal Procedure. Atwell, 128 So. 3d at 169. Explaining that "the underpinning of the holding of both Miller and Graham was the ineligibility for release on parole," the Fourth District concluded that "Miller is inapplicable because Miller applies only to a mandatory sentence of life without the possibility of parole." Id.

Following the Fourth District's denial of rehearing, Atwell petitioned this Court to invoke its discretionary jurisdiction, asserting that the Fourth District expressly construed a provision of the federal constitution. See art. V, § 3(b)(3), Fla. Const. We granted jurisdiction and considered both merits briefs and supplemental briefs after the issuance of our other recent juvenile sentencing decisions.

While the case was pending in this Court, the Commission on Offender Review conducted a parole hearing on June 10, 2015, which was twenty-five years after Atwell had been sentenced, and entered an order on June 12, 2015. Based on Atwell's initial parole interview, the Commission set a presumptive parole release date of December 27, 2130, with another interview in February 2022. However, in February 2022, when Atwell will be forty-seven years of age, his presumptive parole release date will be able to be changed only for "reasons of institutional

conduct or the acquisition of new information." § 947.16(5), Fla. Stat. Because static factors, such as the crime he committed and his other crimes, including armed robbery, account for all but 84 of the 1,686 months (140.5 years), there is no realistic chance of a change in the presumptive parole release date. Clearly, a release date in 2130 (1,686 months or 140.5 years) far exceeds Atwell's life expectancy.

## ANALYSIS

Our analysis of the constitutionality of Atwell's sentence begins with the United States Supreme Court's recent juvenile sentencing jurisprudence and how this Court has applied that precedent in juvenile sentencing cases. We then discuss the statutory framework of Florida's existing parole system. Finally, mindful of the Legislature's enactment of a distinct sentencing framework for juvenile offenders in the wake of <u>Miller</u> and <u>Graham</u>, we analyze whether Florida's parole system provides for the individualized consideration of a defendant's youth at the time of the offense in compliance with <u>Miller</u>.

### I. Recent Juvenile Sentencing Jurisprudence

Over the past decade, the United States Supreme Court has recognized that juveniles are constitutionally different than adults with respect to the law's harshest criminal sentences. Beginning with its decision in <u>Roper v. Simmons</u>, 543 U.S. 551, 568 (2005), in which it held that the Eighth and Fourteenth Amendments bar

the imposition of the death penalty on any individual who was a juvenile at the time the capital crime was committed, the Supreme Court has emphasized juvenile offenders' "diminished culpability" and greater likelihood of rehabilitation.

Building on the rationale of Roper, the Supreme Court held in Graham "that for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Graham, 560 U.S. at 74. As the Supreme Court subsequently explained, Graham insists that a defendant's "youth matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole" because "the characteristics of youth" serve to "weaken rationales for punishment." Miller, 132 S. Ct. at 2465, 2466.

Two years after deciding Graham, the Supreme Court held in Miller that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." Id. at 2469. The Supreme Court explained that its decision mandates that a sentencer consider an offender's "youth and attendant characteristics" before "imposing a particular penalty." Id. at 2471. "Taken together, Graham and Miller establish that 'children are different'; that 'youth matters for purposes of meting out the law's most serious punishments'; and that 'a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for

juveniles.' " Horsley, 160 So. 3d at 399 (quoting Miller, 132 S. Ct. at 2469, 2471, 2475).

In the aftermath of Graham and Miller, this Court has confronted several issues that have required us to consider how those cases affect juvenile sentencing in Florida. In Falcon, this Court held that the Supreme Court's decision in Miller applies retroactively to juvenile offenders whose convictions and sentences were already final at the time Miller was decided. Falcon, 162 So. 3d at 956. In Horsley, this Court held that the appropriate remedy for any juvenile offender whose sentence is unconstitutional under Miller is to apply chapter 2014-220, Laws of Florida—legislation enacted by the Florida Legislature in 2014 to bring Florida's sentencing laws into compliance with the Graham and Miller decisions. Horsley, 160 So. 3d at 409.

This Court has also considered several juvenile sentencing cases that implicate Graham. In Henry, this Court concluded that Graham prohibits sentencing juvenile nonhomicide offenders to aggregate prison terms that ensure those offenders will be imprisoned without obtaining a meaningful opportunity to obtain release, based on their maturity and rehabilitation, and that resentencing pursuant to chapter 2014-220, Laws of Florida, is the proper remedy for any sentence that violates Graham. Henry, 175 So. 3d at 680. Similarly, in Gridine v. State, this Court established that for a defendant convicted of attempted murder, a

seventy-year sentence is unconstitutional because it fails to provide a "meaningful opportunity for early release." 175 So. 3d 672, 674-75 (Fla. 2015).

And, in Lawton v. State, this Court held that the Supreme Court's ban on sentencing juveniles to life without parole for nonhomicide offenses is unqualified, even if the juvenile committed a homicide during the same criminal episode. 181 So. 3d 452 (Fla. 2015). This Court concluded that Graham's categorical rule leaves no room for the "homicide-case exception" previously recognized by some Florida district courts. Id. at 453.

The unifying theme of these unanimous decisions has been our recognition of what "flows straightforwardly from [the Supreme Court's] precedents: specifically, the principle of Roper, Graham, and [the Supreme Court's] individualized sentencing cases that youth matters for purposes of meting out the law's most serious punishments." Miller, 132 S. Ct. at 2471. The "most serious punishments" at issue in our recent juvenile sentencing cases have all involved sentences without the possibility of parole, which is true of most sentences in Florida since the mid-1980s and of all sentences, including those for first-degree murder, since the mid-1990s.

But even though the Legislature has eliminated parole in Florida, there are still inmates—those sentenced before its elimination—who remain eligible for

parole consideration.[4]  And for those parole-eligible inmates who were juveniles at the time of the crime, the question remains whether the principles articulated in Graham and Miller have any application.

The State argues that Atwell's sentence is not unconstitutional because Miller unambiguously applies only to mandatorily imposed life without parole sentences.  Because Atwell's sentence is not "without parole," the State asserts, it is not unconstitutional under Miller.  To the State, it is quite literally as simple as that.

However, throughout this Court's post-Graham and Miller juvenile sentencing jurisprudence, we have consistently followed the spirit of Graham and Miller rather than a narrow, literal interpretation.  For example, in Henry, this Court stated that "[i]n light of the United States Supreme Court's long-held and consistent view that juveniles are different—with respect to prison sentences that are lawfully imposable on adults convicted for the same criminal offenses—we conclude that, when tried as an adult, the specific sentence that a juvenile

_____

4. Although Florida's sentencing statutes no longer provide for parole, there are still approximately 4,626 inmates, sentenced before its elimination, who remain eligible for parole consideration as of July 1, 2014.  See Fla. Comm'n on Offender Review 2014 Annual Report 6, 8, available at https://www.fcor.state.fl.us/docs/reports/FCORannualreport201314.pdf.  In the fiscal year 2013-2014, only 23 of the approximately 4,626 eligible inmates, half a percent, were granted parole.  Id. at 6.

- 13 -

nonhomicide offender receives for committing a given offense is not dispositive as to whether the prohibition against cruel and unusual punishment is implicated." Henry, 175 So. 3d at 680. This Court then recognized, as the Supreme Court itself had done, that "[c]ategorical rules tend to be imperfect" and accordingly determined that the Graham Court had "no intention of limiting its new categorical rule to sentences denominated under the exclusive term of 'life in prison.' " Id. at 679-80.

Other state supreme courts have interpreted Miller similarly to how this Court has interpreted Graham, noting that "nothing [the United States Supreme Court] has said [about children] is 'crime-specific,' suggesting the natural concomitant that what it said is not punishment-specific either." State v. Lyle, 854 N.W.2d 378, 399 (Iowa 2014) (holding that all mandatory minimum sentences of imprisonment for juvenile offenders are unconstitutional).

The Iowa Supreme Court, in fact, confronted a similar challenge in State v. Ragland, 836 N.W.2d 107 (Iowa 2013). There, the defendant was mandatorily sentenced to life in prison without parole. After Miller was issued, the Governor of Iowa commuted Ragland's sentence, along with the sentences of thirty-seven other juvenile offenders, to life sentences with the possibility of parole in sixty years. Id. at 110-11. The Iowa Supreme Court concluded that this action was unconstitutional and reasoned that "[f]or all practical purposes, the same

- 14 -

motivation behind the mandates of Miller applies to the commuted sentence in this case or any sentence that is the practical equivalent to life without parole." Id. at 121 (emphasis added). The Iowa Supreme Court further noted that "it is important that the spirit of the law not be lost in the application of the law." Id. Therefore, the Iowa Supreme Court remanded the Ragland case for resentencing in accordance with Miller. Id. at 122.

Though it did not reference the Iowa case, this Court applied similar reasoning in its Henry and Gridine holdings, concluding that lengthy term-of-years sentences can implicate Graham as unconstitutional for juveniles if those sentences fail to provide for the critical mechanism—a meaningful opportunity for release—at the heart of the Graham holding. Indeed, we did so even though those sentences were not technically labeled as "life in prison." See Henry, 175 So. 3d at 680; Gridine, 175 So. 3d at 674-75. This Court also acknowledged in Horsley that Miller stands for the proposition that "youth matters for purposes of meting out the law's most serious punishments" and that the Eighth Amendment categorically prohibits certain punishments without "considering a juvenile's 'lessened culpability' and greater 'capacity for change.' " Horsley, 160 So. 3d at 398-99 (quoting Miller, 132 S. Ct at 2460).

It is thus evident from our case law that this Court has—and must—look beyond the exact sentence denominated as unconstitutional by the Supreme Court

and examine the practical implications of the juvenile's sentence, in the spirit of the Supreme Court's juvenile sentencing jurisprudence. We accordingly apply those principles to the sentence in this case.

## II. Florida's Existing Parole System

In order to determine whether the eligibility for parole removes a sentence from the purview of Graham and Miller, it is necessary to first understand how parole operates in Florida. Parole is the release of an inmate, prior to the expiration of the inmate's court-imposed sentence, with a period of supervision to be successfully completed by compliance with conditions and terms of the release agreement ordered by the Florida Commission on Offender Review. See William H. Burgess, Fla. Sentencing § 12:18 (2015-16 ed.). See also Florida Parole Comm'n v. Spaziano, 48 So. 3d 714, 721-22 (Fla. 2010). The judiciary has no input as to the operation of the parole system.

An inmate who is eligible for parole has an initial interview with a hearing examiner. That examiner uses a salient factor score—a numerical score based on the offender's present and prior criminal behavior and related factors found to be predictive in regard to parole outcome—as well as the statutory severity of the inmate's offense to determine a corresponding range of months on a matrix that automatically indicates a range of presumptive parole release dates. See Spaziano, 48 So. 3d at 722 n.7. The presumptive parole release dates are the earliest dates an

- 16 -

offender may be released from prison as determined by objective parole guidelines.

Id.

Under Florida statutory law, the objective parole criteria applied by the Commission must "give primary weight to the seriousness of the offender's present criminal offense and the offender's past criminal record." § 947.002, Fla. Stat. (2015). The hearing examiner may consider the aggravating and mitigating circumstances—none of which provide for the level of consideration of the diminished culpability of youth at the time of the offense as sentencing judges now consider post-Miller—that warrant a decision outside the given matrix time range, but must provide written justification for altering the presumptive parole release date. See § 947.172(3), Fla. Stat. (2015); see also Spaziano, 48 So. 3d at 723. The hearing examiner then makes a written recommendation to the Commission of a presumptive parole release date, which is reviewed by a panel of no fewer than two commissioners appointed by the chair. § 947.172(2), Fla. Stat. (2015).

Subsequent parole interviews are conducted to determine whether information has been gathered that could affect the presumptive parole release date. § 947.174, Fla. Stat. (2015). When the inmate's presumptive parole release date nears and if the inmate's institutional conduct and parole release plan are satisfactory, the presumptive parole release date becomes the effective parole release date. § 947.1745, Fla. Stat. (2015). The Commission then engages in a

final review process to determine if release is still appropriate and will authorize or modify the effective parole release date accordingly.  Id.

### III.  Atwell's Sentence Under Florida's Existing Parole System

In most respects, a sentence of life with the possibility of parole for first-degree murder, based on the way Florida's parole process operates under the existing statutory scheme, actually resembles a mandatorily imposed life sentence without parole that is not "proportionate to the offense and the offender."  Horsley, 160 So. 3d at 406.  Based on Florida's objective parole guidelines, an individual who was convicted of a capital offense under section 775.082, Florida Statutes (1990), as Atwell was, will have a presumptive parole release date of anywhere from 300 to 9,998 months in the future.  Fla. Admin. Code R. 23-21.009 (2014).  Importantly, the statute requires "primary weight" in the consideration of parole to be given "to the seriousness of the offender's present offense"—here, the most serious offense of first-degree murder—"and the offender's past criminal record." § 947.002, Fla. Stat.

If an offender convicted of first-degree murder has a high salient score, that offender's range of months for the presumptive parole release date could span from hundreds of months to nearly ten thousand months.  Fla. Admin. Code R. 23-21.009 (2014).  This range of months, which encompasses hundreds of years, could be lawfully imposed without the Commission on Offender Review even

- 18 -

considering mitigating circumstances. The Commission is only required to consider mitigating and aggravating circumstances if it wishes to impose a presumptive parole release date that falls outside the given range of months. Fla. Admin. Code R. 23-21.010 (2010). Further, the enumerated mitigating and aggravating circumstances in rule 23-21.010 of the Florida Administrative Code, even if utilized, do not have specific factors tailored to juveniles. In other words, they completely fail to account for Miller.

Using Florida's objective parole guidelines, then, a sentence for first-degree murder under the pre-1994 statute is virtually guaranteed to be just as lengthy as, or the "practical equivalent" of, a life sentence without the possibility of parole. Indeed, that is the case here, with Atwell's presumptive parole release date having recently been set to 140 years in the future.

A presumptive parole release date set decades beyond a natural lifespan is at odds with the Supreme Court's recent pronouncement in Montgomery. Although a State's remedy to Miller could include a system for paroling certain juvenile offenders "whose crimes reflected only transient immaturity—and who have since matured," the parole system would nevertheless still have to afford juvenile offenders individualized consideration and an opportunity for release. Montgomery, 136 S. Ct. 718, 736 (2016). Most importantly, "their hope for some years of life outside prison walls must be restored." Id. at 737.

The United States Supreme Court concluded its <u>Miller</u> opinion by emphasizing that "<u>Graham</u>, <u>Roper</u>, and [the Supreme Court's] individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." <u>Miller</u>, 132 S. Ct. at 2475. Even a cursory examination of the statutes and administrative rules governing Florida's parole system demonstrates that a juvenile who committed a capital offense could be subject to one of the law's harshest penalties without the sentencer, or the Commission, ever considering mitigating circumstances.

Although some states, such as California[5] and West Virginia,[6] have chosen the parole process as a way to satisfy <u>Graham</u> and <u>Miller</u>,[7] the requirements of the parole process vary significantly from state to state. For example, California adopted legislation that provides a mechanism for resentencing juveniles who initially had life without parole sentences, allowing for parole eligibility and review hearings, but this legislation also established that the parole board must use

5. <u>See</u> Cal. Penal Code § 4801(c) (2013).

6. <u>See</u> W. Va. Code § 62-12-13b(b) (2015).

7. Numerous other states, including Delaware and North Carolina, have modified their criminal sentencing guidelines to allow for more judicial discretion when sentencing juveniles. <u>See</u> Sarah French Russell, <u>Review for Release: Juvenile Offenders, State Parole Practices and the Eighth Amendment</u>, 89 Ind. L.J. 388, 391 (2014).

specific criteria when evaluating juveniles and must "give great weight to the diminished culpability of juveniles as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." Cal. Penal Code § 4801(c) (2013). These are the features identified by the Supreme Court in Miller. See 132 S. Ct. at 2468-69. Similarly, West Virginia now requires its parole board to take into consideration the "diminished culpability of juveniles" during its parole hearings for juvenile offenders. W. Va. Code § 62-12-13b(b) (2015).

In Florida, however, the decision to parole an inmate "is an act of grace of the state and shall not be considered a right." § 947.002(5), Fla. Stat. By statute, the objective parole criteria must "give primary weight to the seriousness of the offender's present criminal offense and the offender's past criminal record." § 947.002(2), Fla. Stat. Importantly, unlike other states, there are no special protections expressly afforded to juvenile offenders and no consideration of the diminished culpability of the youth at the time of the offense. The Miller factors are simply not part of the equation.

Moreover, as we observed in Horsley, the Florida Legislature did not choose a parole-based approach to remedy sentences that are unconstitutional under Graham and Miller. 160 So. 3d at 407. Instead, the Legislature chose to enact chapter 2014-220, Laws of Florida, and to use substantively different criteria for

evaluation, specifically tailored to juveniles and based on the <u>Miller</u> factors.  <u>Id.</u>

Also, at the judicial sentence review hearing under chapter 2014-220, Laws of

Florida, the trial court is required to consider the enumerated <u>Miller</u> factors of

section 921.1402(6), Florida Statutes, along with any other factor it deems

appropriate to review the juvenile's sentence.  <u>See</u> § 921.1402(6), Fla. Stat. (2015).

Parole is, simply put, "patently inconsistent with the legislative intent" as to how to

comply with <u>Graham</u> and <u>Miller</u>.  <u>Horsley</u>, 160 So. 3d at 395.

## CONCLUSION

In <u>Falcon</u>, when considering the retroactivity of <u>Miller</u>, this Court noted that

"[c]onsiderations of fairness and uniformity make it very 'difficult to justify

depriving a person of his liberty or his life, under process no longer considered

acceptable and no longer applied to indistinguishable cases.' " <u>Falcon</u>, 162 So. 3d

at 962 (quoting <u>Witt v. State</u>, 387 So. 2d 922, 925 (Fla. 1980)).  The drastically

different processes for rehabilitating "indistinguishable juvenile offenders"

evidence the "patent unfairness" of applying different remedies.  <u>Id.</u>

When Atwell was sentenced for first-degree murder, the sentencing statute

provided only for the death penalty or life in prison with the possibility of parole

after twenty-five years.  This pre-1994 statute allowed for a capital sentencing

hearing, but mitigation was presented only to decide between the two harsh

sentences Atwell could receive, not for the purpose of individualizing Atwell's

sentence based on his juvenile status.  The trial court was not able to consider how "children are different and how those differences counsel against irrevocably sentencing them to a lifetime in prison."  Miller, 132 S. Ct. at 2469.  Even though Atwell was sentenced to life with the possibility of parole after twenty-five years, under Florida's existing parole system, the earliest date Atwell may be released from prison as determined by objective parole guidelines is the year 2130, or one hundred and forty years after Atwell's crime.  Atwell, then, has no "hope for some years of life outside prison walls."  Montgomery, 136 S. Ct. at 737.

The Supreme Court has emphasized—and this Court's own case law has followed—that the Eighth Amendment requires a trial court to "take into account the differences among defendants and crimes" before imposing a sentence that is, in effect, a sentence to a lifetime in prison.  Miller, 132 S. Ct. at 2469 n.8; see Horsley, 160 So. 3d at 399; Falcon, 162 So. 3d at 959.  Atwell's sentence effectively resembles a mandatorily imposed life without parole sentence, and he did not receive the type of individualized sentencing consideration Miller requires.  The only way to correct Atwell's sentence, consistent with this Court's case law in Horsley, is to resentence Atwell in conformance with chapter 2014-220, Laws of Florida.

Accordingly, for all these reasons, we quash the Fourth District's decision upholding Atwell's life sentence for first-degree murder and we remand for resentencing on that count.

It is so ordered.

LABARGA, C.J., and QUINCE, and PERRY, JJ., concur.
POLSTON, J., dissents with an opinion, in which LEWIS and CANADY, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

I would approve the Fourth District Court of Appeal's decision in Atwell v. State, 128 So. 3d 167 (Fla. 4th DCA 2013), that the defendant's life sentence with the possibility of parole does not violate the Eighth Amendment.

Although the majority takes issue with the extended presumptive parole release date, section 947.174, Florida Statutes, requires a subsequent interview to review this date within 7 years of the initial interview and once every 7 years after that. As explained in Franklin v. State, 141 So. 3d 210 (Fla. 1st DCA 2014), by Judge Ray in the majority opinion, and Judge Thomas in his concurring opinion, this statutorily required review satisfies the Eighth Amendment. Graham v. Florida, 560 U.S. 48 (2010), and Miller v. Alabama, 132 S. Ct. 2455 (2012), do not require that parole be given, only that the defendant has a meaningful opportunity for release. See Franklin, 141 So. 3d at 212. Pursuant to section 947.174(3),

Florida Statutes, the presumptive release date is reviewed periodically in light of information "including, but not limited to, current progress reports, psychological reports, and disciplinary reports." This review should include the type of individualized consideration sought by the majority. Moreover, judicial review may be sought of these parole decisions as they are made. See Franklin, 141 So. 3d at 212.

The majority's decision reaches too far into the merits of a parole process not at issue in this case because of the majority's unjustified perception and suspicion of the Parole Commission's periodic review. I respectfully dissent.

LEWIS and CANADY, JJ., concur.

Application for Review of the Decision of the District Court of Appeal - Direct Conflict of Decisions

      Fourth District - Case No. 4D13-1972

      (Broward County)

Carol Stafford Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

      for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida; Consiglia Terenzio, Bureau Chief, and Heidi Lynn Bettendorf, Assistant Attorney General, West Palm Beach, Florida,

      for Respondent

Paolo Giuseppe Annino, Florida State University College of Law, Tallahassee, Florida,

for Amicus Curiae Public Interest Law Center