# Supreme Court of Florida

_____

No. SC14-1442
_____

**ARTHUR O'DERRELL FRANKLIN,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

November 8, 2018

PER CURIAM.

At the age of 17, Arthur O'Derrell Franklin committed a series of brutal crimes against women. In each case, the female victim testified that Franklin violently attacked her, kidnapped her, drove her to a secluded area and brutally battered, raped, and robbed her while evidencing an extraordinary cruelty and a perverse enjoyment of the suffering he was inflicting. In one case, "the physician who performed the sexual assault battery exam testified that the victim suffered the worst injuries the physician had ever observed." *Franklin v. State*, 141 So. 3d 210, 215 (Fla. 1st DCA 2014) (Thomas, J., concurring). In each of three cases, Franklin was convicted of armed kidnapping, kidnapping, armed sexual battery, sexual

battery, armed robbery, robbery, and aggravated assault, and was sentenced to three 1000-year concurrent sentences with parole. *Id.* at 213 (Thomas, J., concurring). The Parole Commission conducted Franklin's initial parole review and ten subsequent review hearings, and has calculated a presumptive parole release date of 2352. Following the United States Supreme Court's decisions in *Graham v. Florida*, 560 U.S. 48 (2010), and *Miller v. Alabama*, 567 U.S. 460 (2012), Franklin filed a motion to vacate his sentences pursuant to Florida Rule of Criminal Procedure 3.850, arguing that his sentences violate the Eighth Amendment to the United States Constitution as delineated in *Graham* and requesting resentencing. However, the trial court denied the motion, and the First District Court of Appeal affirmed on appeal. *Franklin*, 141 So. 3d at 211. We accepted discretionary review,[1] and for the reasons explained below we now approve the First District's decision and hold that Franklin's sentences with the possibility of parole do not violate *Graham*, meaning that Franklin is not entitled to resentencing under chapter 2014-220, Laws of Florida.

In *Graham*, 560 U.S. at 75, the Supreme Court held that the Eighth Amendment categorically forbids a sentence of life without parole for juvenile nonhomicide offenders, and required that any life sentence for a juvenile

---

1. *See* art. V, § 3(b)(3), Fla. Const.

nonhomicide offender be accompanied by "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation" before the end of the sentence and during the offender's natural life. Notably, the Court did not require that the State actually release a juvenile offender during his natural life or guarantee his eventual freedom, as "those who commit truly horrifying crimes as juveniles may turn out to be irredeemable" and "will remain behind bars for life." *Id.*

Later in *Miller*, 567 U.S. at 479, the United States Supreme Court extended the reasoning of *Graham* and created another Eighth Amendment rule prohibiting the imposition of a mandatory life sentence without the possibility of parole for juvenile homicide offenders. *Miller* did "not foreclose a sentencer's ability to [impose a life without parole sentence] in homicide cases," but required the sentencer to first "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

Applying principles discussed in *Graham* and *Miller*, a majority of this court held in *Atwell v. State*, 197 So. 3d 1040, 1048-50 (Fla. 2016), that a juvenile homicide offender's life *with parole* sentence violated the Eighth Amendment based largely upon a presumptive parole release date set far beyond Atwell's life expectancy. The decision below, finding no Eighth Amendment violation, despite

a presumptive parole release date set far beyond Franklin's life expectancy, clearly conflicts with *Atwell*.[2]

However, instructed by a more recent United States Supreme Court decision, *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017), we have since determined that the majority's analysis in *Atwell* improperly applied *Graham* and *Miller*. *See State v. Michel*, 43 Fla. L. Weekly S298, S299 (Fla. July 12, 2018) (explaining that *LeBlanc* made clear that it was not an unreasonable application of *Graham* "to conclude that, because the [state's] geriatric release program employed normal parole factors, it satisfied *Graham*'s requirement that juveniles convicted of a nonhomicide crime have a meaningful opportunity to receive parole")(quoting *LeBlanc*, 137 S. Ct. at 1729)). As we held in *Michel*, involving a juvenile homicide offender sentenced to life with the possibility of parole after 25 years, Florida's statutory parole process fulfills *Graham*'s requirement that juveniles be given a "meaningful opportunity" to be considered for release during their natural life based upon "normal parole factors," *LeBlanc*, 137 S. Ct. at 1729, as it includes initial and subsequent parole reviews based upon individualized considerations before the Florida Parole Commission that are subject to judicial review, *Michel*, 43 Fla. L. Weekly at 5300 (citing §§ 947.16-.174, Fla. Stat.).

---

2. The First District decided *Franklin* before we decided *Atwell*. However, we stayed *Franklin* pending resolution of several other cases.

As in *Michel*, because Franklin's sentences include eligibility for parole there is no violation of the categorical rule announced in *Graham*. *Michel*, 43 Fla. L. Weekly at S299-300.

## CONCLUSION

We approve the First District's decision in *Franklin* and hold that Franklin's 1000-year sentences with parole eligibility do not violate the categorical rule of *Graham*.

It is so ordered.

CANADY, C.J., and LEWIS, POLSTON, and LAWSON, JJ., concur.
PARIENTE, J., dissents with an opinion, in which QUINCE and LABARGA, JJ., concur.

ANY MOTION FOR REHEARING OR CLARIFICATION MUST BE FILED WITHIN SEVEN DAYS. A RESPONSE TO THE MOTION FOR REHEARING/CLARIFICATION MAY BE FILED WITHIN FIVE DAYS AFTER THE FILING OF THE MOTION FOR REHEARING/CLARIFICATION. NOT FINAL UNTIL THIS TIME PERIOD EXPIRES TO FILE A REHEARING/CLARIFICATION MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., dissenting.

Arthur Franklin committed nonhomicide crimes at age 17 and received concurrent sentences of 1000 years. Now 51, he has spent his entire adult life in prison. Franklin has appeared before the Parole Commission 11 different times between 1987 and 2014. Yet, there is no indication that the Parole Commission has made the constitutionally required considerations regarding whether Franklin is entitled to release based on maturity and rehabilitation.

- 5 -

Most recently, when the trial court held a hearing to consider Franklin's motion for relief from his 1000-year sentences, Franklin was without counsel and no evidentiary hearing was held. At the very least, this case should be remanded to the trial court for an evidentiary hearing, where Franklin is represented by counsel, to determine whether the parole process, as applied to his case, provides Franklin the constitutionally required individualized consideration and a meaningful opportunity for release based on demonstrated maturity and rehabilitation. *Montgomery v. Louisiana*, 136 S. Ct. 718, 734-36 (2016).

As the record stands, the earliest Franklin could be released from prison based on existing parole guidelines is 2352—369 years after his crimes. At his first parole review in 1987, the Parole Commission assessed 4400 months for the aggravating factors of his multiple offenses, giving Franklin a presumptive parole release date (PPRD) of 2350. The PPRD varied only a few years in his ten subsequent parole reviews. There is no indication that Franklin has even a chance of being released before the end of his natural life expectancy. Thus, Franklin has no "hope for some years of life outside prison walls." *Id.* at 737.

Perhaps even more salient than the defendant in *Atwell*[3] or the defendant in

*Michel*,[4] the operation of Florida's parole system in this case leaves Franklin with a

sentence that is "guaranteed to be just as lengthy as, or the 'practical equivalent

of,' a life sentence without the possibility of parole." *Atwell*, 197 So. 3d at 1048.

This case highlights how, contrary to the majority's suggestion, Florida's current

parole system affords juvenile offenders no *meaningful* opportunity for release. As

I have previously explained:

> In *Atwell*, this Court concluded that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of Atwell's juvenile status at the time of the murder." 197 So. 3d at 1041. We further explained that Florida's "current parole process . . . fails to take into account the offender's juvenile status at the time of the offense and effectively forces juvenile offenders to serve disproportionate sentences." *Id.* at 1042.
>
> This Court could not have been clearer in its conclusion that "[p]arole is, simply put, 'patently inconsistent with the legislative intent' as to how to comply with *Graham* [*v. Florida*, 560 U.S. 48 (2010),] and *Miller* [*v. Alabama*, 567 U.S. 460 (2012)]." *Id.* at 1049 (quoting *Horsley*[ *v. State*], 160 So. 3d [393,] 395 [(Fla. 2015)]). As the *Atwell* Court noted, while the Legislature could have chosen "a parole-based approach" to comply with *Miller* and *Graham*, it chose instead to fashion a different remedy of resentencing under a new law, which explicitly considers the *Miller* factors. *Id.*
>
> Specifically, Florida's current parole system does not provide juvenile offenders an opportunity to demonstrate that release is appropriate based on maturity and rehabilitation for several reasons. First, the Commission relies on static, unchanging factors, such as the crimes committed and previous offenses, when determining whether

---

3. *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016).

4. *State v. Michel*, 43 Fla. L. Weekly S298 (Fla. July 12, 2018).

or not to grant an offender parole. *See* Fla. Admin. Code. R. 23-21.007. Under *Graham*, however, a juvenile's "meaningful opportunity to obtain release [must be] based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75. Relying on static factors such as the offense committed ignores the focus on the "demonstrated maturity and rehabilitation" that *Graham* and *Miller* require. *Id.*

Second, an inmate seeking parole has no right to be present at the Commission meeting and has no right to an attorney. Although the hearing examiner sees the inmate prior to the hearing, the commissioners do not. Fla. Admin. Code R. 23-21.004(13); 23-21.001(6). Third, there is only a limited opportunity for supporters of the inmate to speak on the inmate's behalf. Fla. Comm'n on Offender Review, *Release and Supervision Frequently Asked Questions*, https://www.fcor.state.fl.us/mediaFactSheet.shtml (last visited April 10, 2018) ("All speakers, in support, must share the allotted 10 minute time frame for speaking. All speakers, in opposition, must share the allotted 10 minute time frame for speaking."). Finally, there is no right to appeal the Commission's decision, absent filing a writ of mandamus. *Armour v. Fla. Parole Comm'n*, 963 So. 2d 305, 307 (Fla. 1st DCA 2007).

*Michel*, 43 Fla. L. Weekly at S303 (Pariente, J., dissenting).

The majority again displaces this Court's precedent in *Atwell*, arguing that it has somehow been overruled by the United States Supreme Court's opinion in *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017). I again reiterate why the majority's reliance on that decision is misplaced:

[T]here are two reasons why the plurality's reliance on *LeBlanc* is misplaced. First, the plurality fails to mention that the United States Supreme Court was considering only whether the Fourth Circuit had improperly intruded on the authority of the Virginia Supreme Court to conclude that its program satisfied the Eighth Amendment. As the *LeBlanc* court explained:

In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (per curiam) (internal quotation marks omitted). In other words, a litigant must "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ibid.* (internal quotation marks omitted). This is "meant to be" a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Id.* at 1728. Accordingly, even if the United States Supreme Court believed that the Virginia Supreme Court's decision was in error, this still would not have been enough to overturn the state court decision. Instead of looking at the *LeBlanc* decision in its proper context through the rigorous standard of review, the plurality uses the United States Supreme Court opinion to adopt the dissent written by Justice Polston in *Atwell*. *See Atwell*, 197 So. 3d at 1050 (Polston, J., dissenting).

In fact, the United States Supreme Court's holding in *LeBlanc* made no mention of this Court's opinion in *Atwell*, nor was it considering a state statute similar to that at issue in this case. Despite the weight the plurality would give the opinion, *LeBlanc* has no precedential value in this instance and does not implicate this Court's requirement to construe our Eighth Amendment jurisprudence in conformance with the United States Supreme Court.

Second, a review of *LeBlanc* demonstrates that Virginia's geriatric release program is entirely different from Florida's parole system. Indeed, the program includes a consideration of many factors such as the " 'individual's history . . . and the individual's conduct . . . during incarceration,' as well as the individual's 'inter-personal relationships with staff and inmates.' " *LeBlanc*, 137 S. Ct. at 1729 (quoting *LeBlanc v. Mathena*, 841 F.3d 256, 280-81 (4th Cir. 2016) (Niemeyer, J., dissenting)). Consideration of these factors could lead to the individual's conditional release in light of his or her "demonstrated maturity and rehabilitation." *Id.* (quoting *Graham*, 560 U.S. at 75). Florida's parole system, as we explained in *Atwell*, does not—with its primary concern being on the perceived dangerousness

- 9 -

of the criminal defendant. Indeed, the Florida Commission on Offender Review's mission statement is "Ensuring public safety and providing victim assistance through the post prison release process." Fla. Comm'n on Offender Review 2016 Annual Report (2016), https://www.fcor.state.fl.us/docs/reports/FCORannualreport201516.pdf.

*Michel*, 43 Fla. L. Weekly at S302 (Pariente, J., dissenting).

Franklin is clearly entitled to relief pursuant to this Court's opinion in *Atwell*. His PPRD of 2352 is 222 years beyond Atwell's PPRD, which we held unconstitutional. As this Court explained in *Atwell*:

> A presumptive parole release date set decades beyond a natural lifespan is at odds with the Supreme Court's recent pronouncement in *Montgomery*. Although a State's remedy to *Miller* could include a system for paroling certain juvenile offenders "whose crimes reflected only transient immaturity—and who have since matured," the parole system would nevertheless still have to afford juvenile offenders individualized consideration and an opportunity for release. *Montgomery*, 136 S. Ct. 718, 736 (2016). Most importantly, "their hope for some years of life outside prison walls must be restored." *Id.* at 737.
>
> The United States Supreme Court concluded its *Miller* opinion by emphasizing that "*Graham*, *Roper* [*v. Simmons*, 543 U.S. 551 (2005)], and [the Supreme Court's] individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." *Miller*, 132 S. Ct. at 2475. Even a cursory examination of the statutes and administrative rules governing Florida's parole system demonstrates that a juvenile who committed a capital offense could be subject to one of the law's harshest penalties without the sentencer, or the Commission, ever considering mitigating circumstances.

*Atwell*, 197 So. 3d at 1048-49.

Thus, I would conclude that Franklin's sentences clearly violate the United States Constitution. In doing so, I note that "[t]his result would not guarantee [Franklin] any particular term of years sentence . . . but would require the sentencing court to consider all of the *Miller* factors when resentencing [Franklin]." *Michel*, 43 Fla. L. Weekly at S304 (Pariente, J., dissenting).

## CONCLUSION

For these reasons, I would quash the First District Court of Appeal's decision in *Franklin v. State*, 141 So. 3d 210, 215 (Fla. 1st DCA 2014), affirming Franklin's sentences, and remand for resentencing. At the very least, Franklin is entitled to an evidentiary hearing, with the representation of counsel, to determine whether the parole process will afford him a meaningful opportunity for release based on demonstrated maturity and rehabilitation, as the Eighth Amendment to the United States Constitution requires.

QUINCE and LABARGA, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Direct Conflict of Decisions

First District - Case Nos. 1D13-2516, 1D13-2517, and 1D13-2518

(Duval County)

Andy Thomas, Public Defender, and Glen P. Gifford, Assistant Public Defender, Second Judicial Circuit, Tallahassee, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Trisha Meggs Pate, Bureau Chief, and Sharon S. Traxler, Assistant Attorney General, Tallahassee, Florida,

for Respondent