PARIENTE, J., dissenting.
Arthur Franklin committed nonhomicide crimes at age 17 and received concurrent sentences of 1000 years. Now 51, he has spent his entire adult life in prison. Franklin has appeared before the Parole Commission 11 different times between 1987 and 2014. Yet, there is no indication that the Parole Commission has made the constitutionally required considerations regarding whether Franklin is entitled to release based on maturity and rehabilitation.
Most recently, when the trial court held a hearing to consider Franklin's motion for relief from his 1000-year sentences, Franklin was without counsel and no evidentiary hearing was held. At the very least, this case should be remanded to the trial court for an evidentiary hearing, where Franklin is represented by counsel, to determine whether the parole process, as applied to his case, provides Franklin the constitutionally required individualized consideration and a meaningful opportunity for release based on demonstrated maturity and rehabilitation. Montgomery v. Louisiana , --- U.S. ----, 136 S.Ct. 718, 734-36, 193 L.Ed.2d 599 (2016).
As the record stands, the earliest Franklin could be released from prison based on existing parole guidelines is 2352-369 years after his crimes. At his first parole review in 1987, the Parole Commission assessed 4400 months for the aggravating factors of his multiple offenses, giving Franklin a presumptive parole release date (PPRD) of 2350. The PPRD varied only a few years in his ten subsequent parole reviews. There is no indication that Franklin has even a chance of being released before the end of his natural life expectancy. Thus, Franklin has no "hope for some years of life outside prison walls." Id. at 737.
Perhaps even more salient than the defendant in Atwell[3] or the defendant in Michel ,[4] the operation of Florida's parole system in this case leaves Franklin with a sentence that is "guaranteed to be just as lengthy as, or the 'practical equivalent of,' a life sentence without the possibility of parole." Atwell , 197 So.3d at 1048. This case highlights how, contrary to the majority's suggestion, Florida's current parole system affords juvenile offenders no meaningful opportunity for release. As I have previously explained:
In Atwell , this Court concluded that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of Atwell's juvenile status at the time of the murder." 197 So.3d at 1041. We further explained that Florida's "current parole process ... fails to take into account the offender's juvenile status at the time of the offense and effectively forces juvenile offenders to serve disproportionate sentences." Id. at 1042.
This Court could not have been clearer in its conclusion that "[p]arole is, simply put, 'patently inconsistent with the legislative intent' as to how to comply with *1243 Graham [v. Florida , 560 U.S. 48, 130 S.Ct. 2011, 176 L.Ed.2d 825 (2010),] and Miller [v. Alabama , 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012) ]." Id. at 1049 (quoting Horsley [ v. State ], 160 So.3d [393,] 395 [ (Fla. 2015) ] ). As the Atwell Court noted, while the Legislature could have chosen "a parole-based approach" to comply with Miller and Graham , it chose instead to fashion a different remedy of resentencing under a new law, which explicitly considers the Miller factors. Id.
Specifically, Florida's current parole system does not provide juvenile offenders an opportunity to demonstrate that release is appropriate based on maturity and rehabilitation for several reasons. First, the Commission relies on static, unchanging factors, such as the crimes committed and previous offenses, when determining whether or not to grant an offender parole. See Fla. Admin. Code. R. 23-21.007. Under Graham , however, a juvenile's "meaningful opportunity to obtain release [must be] based on demonstrated maturity and rehabilitation." Graham , 560 U.S. at 75 [130 S.Ct. 2011]. Relying on static factors such as the offense committed ignores the focus on the "demonstrated maturity and rehabilitation" that Graham and Miller require. Id.
Second, an inmate seeking parole has no right to be present at the Commission meeting and has no right to an attorney. Although the hearing examiner sees the inmate prior to the hearing, the commissioners do not. Fla. Admin. Code R. 23-21.004(13) ; 23-21.001(6). Third, there is only a limited opportunity for supporters of the inmate to speak on the inmate's behalf. Fla. Comm'n on Offender Review, Release and Supervision Frequently Asked Questions , https://www.fcor.state.fl.us/mediaFactSheet.shtml (last visited April 10, 2018) ("All speakers, in support, must share the allotted 10 minute time frame for speaking. All speakers, in opposition, must share the allotted 10 minute time frame for speaking."). Finally, there is no right to appeal the Commission's decision, absent filing a writ of mandamus. Armour v. Fla. Parole Comm'n , 963 So.2d 305, 307 (Fla. 1st DCA 2007).
Michel , 257 So.3d at 15 (Pariente, J., dissenting).
The majority again displaces this Court's precedent in Atwell , arguing that it has somehow been overruled by the United States Supreme Court's opinion in Virginia v. LeBlanc , --- U.S. ----, 137 S.Ct. 1726, 198 L.Ed.2d 186 (2017). I again reiterate why the majority's reliance on that decision is misplaced:
[T]here are two reasons why the plurality's reliance on LeBlanc is misplaced. First, the plurality fails to mention that the United States Supreme Court was considering only whether the Fourth Circuit had improperly intruded on the authority of the Virginia Supreme Court to conclude that its program satisfied the Eighth Amendment. As the LeBlanc court explained:
In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." Woods v. Donald , 575 U.S. ----, ----, 135 S.Ct. 1372, 1376, 191 L.Ed.2d 464 (2015) (per curiam) (internal quotation marks omitted). In other words, a litigant must "show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Ibid. (internal quotation marks omitted). This is "meant to be" a difficult standard to meet.
*1244 Harrington v. Richter , 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011).
Id. at 1728. Accordingly, even if the United States Supreme Court believed that the Virginia Supreme Court's decision was in error, this still would not have been enough to overturn the state court decision. Instead of looking at the LeBlanc decision in its proper context through the rigorous standard of review, the plurality uses the United States Supreme Court opinion to adopt the dissent written by Justice Polston in Atwell . See Atwell , 197 So.3d at 1050 (Polston, J., dissenting).
In fact, the United States Supreme Court's holding in LeBlanc made no mention of this Court's opinion in Atwell , nor was it considering a state statute similar to that at issue in this case. Despite the weight the plurality would give the opinion, LeBlanc has no precedential value in this instance and does not implicate this Court's requirement to construe our Eighth Amendment jurisprudence in conformance with the United States Supreme Court.
Second, a review of LeBlanc demonstrates that Virginia's geriatric release program is entirely different from Florida's parole system. Indeed, the program includes a consideration of many factors such as the " 'individual's history ... and the individual's conduct ... during incarceration,' as well as the individual's 'inter-personal relationships with staff and inmates.' " LeBlanc , 137 S.Ct. at 1729 (quoting LeBlanc v. Mathena , 841 F.3d 256, 280-81 (4th Cir. 2016) (Niemeyer, J., dissenting) ). Consideration of these factors could lead to the individual's conditional release in light of his or her "demonstrated maturity and rehabilitation." Id. (quoting Graham , 560 U.S. at 75, 130 S.Ct. 2011 ). Florida's parole system, as we explained in Atwell , does not-with its primary concern being on the perceived dangerousness of the criminal defendant. Indeed, the Florida Commission on Offender Review's mission statement is "Ensuring public safety and providing victim assistance through the post prison release process." Fla. Comm'n on Offender Review 2016 Annual Report (2016), https://www.fcor.state.fl.us/docs/reports/FCORannualreport201516.pdf.
Michel , 257 So.3d at 15 (Pariente, J., dissenting).
Franklin is clearly entitled to relief pursuant to this Court's opinion in Atwell . His PPRD of 2352 is 222 years beyond Atwell's PPRD, which we held unconstitutional. As this Court explained in Atwell :
A presumptive parole release date set decades beyond a natural lifespan is at odds with the Supreme Court's recent pronouncement in Montgomery . Although a State's remedy to Miller could include a system for paroling certain juvenile offenders "whose crimes reflected only transient immaturity-and who have since matured," the parole system would nevertheless still have to afford juvenile offenders individualized consideration and an opportunity for release. Montgomery , --- U.S. ----, 136 S.Ct. 718, 736, 193 L.Ed.2d 599 (2016). Most importantly, "their hope for some years of life outside prison walls must be restored." Id. at 737.
The United States Supreme Court concluded its Miller opinion by emphasizing that " Graham , Roper [v. Simmons , 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005) ], and [the Supreme Court's] individualized sentencing decisions make clear that a judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles." Miller , 132 S.Ct. at 2475. Even a cursory examination of the statutes and administrative rules governing *1245 Florida's parole system demonstrates that a juvenile who committed a capital offense could be subject to one of the law's harshest penalties without the sentencer, or the Commission, ever considering mitigating circumstances.
Atwell , 197 So.3d at 1048-49.
Thus, I would conclude that Franklin's sentences clearly violate the United States Constitution. In doing so, I note that "[t]his result would not guarantee [Franklin] any particular term of years sentence ... but would require the sentencing court to consider all of the Miller factors when resentencing [Franklin]." Michel , 43 Fla. L. Weekly at S304, --- So.3d at ---- (Pariente, J., dissenting).
CONCLUSION
For these reasons, I would quash the First District Court of Appeal's decision in Franklin v. State , 141 So.3d 210, 215 (Fla. 1st DCA 2014), affirming Franklin's sentences, and remand for resentencing. At the very least, Franklin is entitled to an evidentiary hearing, with the representation of counsel, to determine whether the parole process will afford him a meaningful opportunity for release based on demonstrated maturity and rehabilitation, as the Eighth Amendment to the United States Constitution requires.
QUINCE and LABARGA, JJ., concur.

Atwell v. State , 197 So.3d 1040 (Fla. 2016).

State v. Michel , 257 So.3d 3 (Fla. July 12, 2018).