# Supreme Court of Florida

_____

No. SC16-2187
_____

**STATE OF FLORIDA,**
Petitioner,

vs.

**BUDRY MICHEL,**
Respondent.

[July 12, 2018]

POLSTON, J.

We review the decision of the Fourth District Court of Appeal in *Michel v.
State*, 204 So. 3d 101 (Fla. 4th DCA 2016), in which the Fourth District certified
that its decision conflicts with the decisions of the Fifth District Court of Appeal in
*Stallings v. State*, 198 So. 3d 1081 (Fla. 5th DCA 2016), and *Williams v. State*, 198
So. 3d 1084 (Fla. 5th DCA 2016).[1]  We quash the Fourth District's decision in
*Michel* and approve the Fifth District's decisions in *Stallings* and *Williams* to the
extent that they are consistent with this opinion.

_____

1.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.

As explained below, we hold that juvenile offenders' sentences of life with the possibility of parole after 25 years do not violate the Eighth Amendment of the United States Constitution as delineated by the United States Supreme Court in *Graham v. Florida*, 560 U.S. 48 (2010), *Miller v. Alabama*, 567 U.S. 460 (2012), and *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017). Therefore, such juvenile offenders are not entitled to resentencing under section 921.1402, Florida Statutes.

**BACKGROUND**

Budry Michel was charged with first-degree murder, armed robbery, armed kidnapping, and attempted armed robbery in the shooting death of Lynette Grames and robbery of Adnan Shafi Dada. The crimes occurred in 1991 when Michel was sixteen years old. After a jury convicted him of first-degree premeditated murder and armed robbery, he was sentenced to life imprisonment with the possibility of parole after 25 years with a concurrent sentence for the armed robbery that has since expired. The Fourth District affirmed Michel's judgment and sentence on direct appeal. *See Michel v. State*, 727 So. 2d 941 (Fla. 4th DCA 1998).

After the United States Supreme Court issued its opinion in *Miller*, Michel filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. The motion asserted that he was sentenced to life in prison for a homicide and, because he was under eighteen at the time of the crime, he was entitled to relief under *Miller*. The State argued that *Miller* was inapplicable

- 2 -

because Michel had the opportunity for release on parole. The trial court summarily denied the motion for the reasons stated in the State's response. On appeal, the Fourth District reversed, interpreting this Court's opinion in *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016), to require resentencing even where the offender may later obtain parole. *See Michel*, 204 So. 3d at 101.

## ANALYSIS

The United States Supreme Court's Eighth Amendment precedent regarding juvenile sentencing requires a mechanism for providing juveniles with an opportunity for release based upon their individual circumstances, which is not a standard aimed at guaranteeing an outcome of release for all juveniles regardless of individual circumstances that might weigh against release.

Specifically, in *Graham*, 560 U.S. at 74, the United States Supreme Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." Importantly, the United States Supreme Court continued by explaining the following:

> A State is not required to guarantee eventual freedom to a juvenile offender convicted of a nonhomicide crime. What the State must do, however, is give defendants like Graham some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation. It is for the State, in the first instance, to explore the means and mechanisms for compliance. It bears emphasis, however, that while the Eighth Amendment prohibits a State from imposing a life without parole sentence on a juvenile nonhomicide offender, it does not require the State to release that offender during his natural life. Those who commit truly horrifying crimes as juveniles may turn

out to be irredeemable, and thus deserving of incarceration for the duration of their lives. The Eighth Amendment does not foreclose the possibility that persons convicted of nonhomicide crimes committed before adulthood will remain behind bars for life. It does prohibit States from making the judgment at the outset that those offenders never will be fit to reenter society.

*Id.* at 75.

Then, in *Miller*, 567 U.S. 460, the United States Supreme Court extended its categorical rule prohibiting life sentences without parole for juvenile offenders convicted of nonhomicide crimes to juvenile offenders convicted of homicide. The Court held that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Id.* at 479. It explained that "[m]andatory life without parole for a juvenile precludes consideration of his chronological age and its hallmark features—among them, immaturity, impetuosity, and failure to appreciate risks and consequences." *Id.* at 477. "[Y]outh matters in determining the appropriateness of a lifetime of incarceration without the possibility of parole." *Id.* at 473. And "[a]lthough [the United States Supreme Court did] not foreclose a sentencer's ability to make that judgment in homicide cases, [the Court did] require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480.

In *Atwell*, when attempting to apply the United States Supreme Court's decisions in *Graham* and *Miller*, a majority of this Court took issue with extended

presumptive parole release dates that may occur under Florida's parole statute and held that "[p]arole is, simply put, 'patently inconsistent with the legislative intent' as to how to comply with *Graham* and *Miller*." *Atwell*, 197 So. 3d at 1049 (quoting *Horsley v. State*, 160 So. 3d 393, 395 (Fla. 2015)).

However, the more recent decision of *LeBlanc*, 137 S. Ct. 1726, has clarified that the majority's holding does not properly apply United States Supreme Court precedent. We reject the dissent's assertion that we must adhere to our prior error in *Atwell* and willfully ignore the United States Supreme Court's clarification in *LeBlanc*. *See Rotemi Realty, Inc. v. Act Realty Co.*, 911 So. 2d 1181, 1188 (Fla. 2005) ("[S]tare decisis counsels us to follow our precedents *unless* there has been 'a significant change in circumstances after the adoption of the legal rule, or . . . an error in legal analysis.' " (emphasis added) (quoting *Dorsey v. State*, 868 So. 2d 1192, 1199 (Fla. 2003))).

In *LeBlanc*, 137 S. Ct. at 1729, the United States Supreme Court reversed the Fourth Circuit Court of Appeals and held that a Virginia court's decision affirming a juvenile offender's sentence of life for a nonhomicide crime subject to the possibility of conditional geriatric release was not an unreasonable application of the Supreme Court's case law. The Virginia court had relied on *Angel v. Commonwealth*, 704 S.E. 2d 386 (Va. 2011), where the Virginia Supreme Court held that Virginia's geriatric release program complied with *Graham* "because it

- 5 -

provided 'the meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation required by the Eighth Amendment.' " *LeBlanc*, 137 S. Ct. at 1728 (quoting *Angel*, 704 S.E. 2d at 402). "The [Virginia] statute establishing the program provides:"

> Any person serving a sentence imposed upon a conviction for a felony offense . . . (i) who has reached the age of sixty-five or older and who has served at least five years of the sentence imposed or (ii) who has reached the age of sixty or older and who has served at least ten years of the sentence imposed may petition the Parole Board for conditional release.

*Id.* (quoting Va. Code Ann. § 53.1-40.01 (2013)). Further, "[t]he regulations for conditional release under this statute provide that if the prisoner meets the qualifications for consideration contained in the statute, the factors used in the normal parole consideration process apply to conditional release decisions under this statute." *Id.* (quoting *Angel*, 704 S.E. 2d at 402).

As the United States Supreme Court explained in *LeBlanc*,

> *Graham* did not decide that a geriatric release program like Virginia's failed to satisfy the Eighth Amendment because that question was not presented. And it was not objectively unreasonable for the state court to conclude that, because the geriatric release program employed normal parole factors, it satisfied *Graham*'s requirement that juveniles convicted of a nonhomicide crime have a meaningful opportunity to receive parole. The geriatric release program instructs Virginia's Parole Board to consider factors like the "individual's history . . . and the individual's conduct ... during incarceration," as well as the prisoner's "inter-personal relationships with staff and inmates" and "[c]hanges in attitude toward self and others." *See* 841 F.3d at 280–281 (Niemeyer, J., dissenting) (citing Virginia Parole Board Policy Manual 2–4 (Oct. 2006)). Consideration of these factors could allow

the Parole Board to order a former juvenile offender's conditional release in light of his or her "demonstrated maturity and rehabilitation." *Graham*, 560 U.S., at 75.

*Id. at* 1728-29.

Similarly, here, Michel's sentence does not violate *Graham* or *Miller* because Michel was not sentenced to life without the possibility of parole. Michel is eligible for parole after serving 25 years of his sentence, which is certainly within his lifetime since he was sentenced in 1996 at the age of 16. The United States Supreme Court's precedent states that the "Eighth Amendment . . . does not require the State to release [a juvenile] offender during his natural life." *Graham*, 560 U.S. at 75. It only requires states to provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." *Id.* And Michel will receive a "meaningful opportunity" under Florida's parole system after serving 25 years in prison and then (if applicable) every 7 years thereafter. *See* §§ 947.16-.174, Fla. Stat.

Florida's statutorily required initial interview and subsequent reviews before the Florida Parole Commission include the type of individualized consideration discussed by the United States Supreme Court in *Miller*. For example, under section 947.174(3), Florida Statutes, the presumptive parole release date is reviewed every 7 years in light of information "including, but not limited to, current progress reports, psychological reports, and disciplinary reports." This

information, including these individualized reports, would demonstrate maturity and rehabilitation as required by *Miller* and *Graham*.  Moreover, there is no evidence in this record that Florida's preexisting statutory parole system (i) fails to provide Michel with a "meaningful opportunity to obtain release," *Graham*, 560 U.S. at 75, or (ii) otherwise violates *Miller* and *Graham* when applied to juvenile offenders whose sentences include the possibility of parole after 25 years.  And these parole decisions are subject to judicial review.  *See Johnson v. Fla. Parole Comm'n*, 841 So. 2d 615, 617 (Fla. 1st DCA 2003) (recognizing that the Parole Commission's final orders are reviewable in circuit court through an extraordinary writ petition); *see also Parole Comm'n v. Huckelbury*, 903 So. 2d 977, 978 (Fla. 1st DCA 2005) (reviewing a circuit court's order on an inmate's petition challenging the suspension of a presumptive parole release date).

Accordingly, if a Virginia juvenile life sentence subject to possible conditional geriatric release after four decades of incarceration based upon the individualized considerations quoted above conforms to current case law from the United States Supreme Court, a Florida juvenile life sentence with the possibility of parole after 25 years does too.  *See also Friedlander v. United States*, 542 Fed. Appx. 576, 577 (9th Cir. 2013) (holding *Miller* did not apply to juvenile offender's life sentence because "Friedlander was not sentenced to life without parole [as] Friedlander admits that he 'has seen the parole board approximately 8 time[s]' ");

*Lewis v. State*, 428 S.W.3d 860, 863 (Tex. Crim. App. 2014) (holding that a juvenile's mandatory sentence of life with possibility of parole did not violate *Miller*, explaining that "[l]ife in prison with the possibility of parole leaves a route for juvenile offenders to prove that they have changed while also assessing a punishment that the Legislature has deemed appropriate"); *James v. United States*, 59 A.3d 1233, 1235 (D.C. 2013) (holding that *Graham* and *Miller* did not apply to a Washington, D.C., juvenile offender's sentence of a mandatory minimum of 30 years to life with eligibility for parole after 30 years).[2]

## CONCLUSION

We hold that juvenile offenders' sentences of life with the possibility of parole after 25 years under Florida's parole system do not violate "*Graham*'s requirement that juveniles . . . have a meaningful opportunity to receive parole." *LeBlanc*, 137 S. Ct. at 1729.  Therefore, such juvenile offenders are not entitled to resentencing under section 921.1402, Florida Statutes.  Accordingly, we quash the

---

2. The Iowa Supreme Court invalidated a juvenile offender's 50-year sentence with eligibility for parole after 35 years, but it "independently appl[ied] article I, section 17 of the Iowa Constitution" to do so. *State v. Pearson*, 836 N.W.2d 88, 96 (Iowa 2013).  This Court cannot find an independent basis in our Florida Constitution. *See* art. I, § 17, Fla. Const.  ("The prohibition against cruel or unusual punishment, and the prohibition against cruel and unusual punishment, shall be construed in conformity with decisions of the United States Supreme Court which interpret the prohibition against cruel and unusual punishment provided in the Eighth Amendment to the United States Constitution.").

Fourth District's decision in *Michel* and approve the Fifth District's decisions in *Stallings* and *Williams* to the extent that they are consistent with this opinion.

It is so ordered.

CANADY, C.J., and LAWSON, J., concur.
LEWIS, J., concurs in result.
PARIENTE, J., dissents with an opinion, in which QUINCE and LABARGA, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

PARIENTE, J., dissenting.

I dissent from the plurality's decision holding that Budry Michel is not entitled to relief from his life sentence. Plurality op. at 2. Michel, who was sixteen years old at the time of his crimes, was sentenced to a mandatory life sentence with the possibility of parole after twenty-five years. *See* plurality op. at 2. Based on this Court's precedent in *Atwell v. State*, 197 So. 3d 1040 (Fla. 2016), Michel is entitled to resentencing. Instead, the plurality denies Michel relief, disregarding our precedent in *Atwell*, while offering no convincing reason for refusing to apply that case, which was decided a mere two years ago.

Because Atwell was granted resentencing by this Court, he is now entitled to a new sentencing hearing where his youth and other factors are required to be considered when determining the appropriate sentence. *See* § 921.1401, Fla. Stat. (2017). Additionally, at the hearing, the sentencing court would have the

- 10 -

discretion to impose a term of years sentence as low as forty years' imprisonment. *See* § 775.082(1)(b)1., Fla. Stat. (2017).  Moreover, and importantly, Atwell would be entitled to review of his sentence after twenty-five years' imprisonment.  *See* § 921.1402(2)(a), Fla. Stat. (2017).  Atwell's sentence review hearing would be presided over by a trial judge, and would include his presence with an attorney, and the ability to present pertinent information to prove his entitlement to release based on maturity and rehabilitation.  *Id.* § 921.1402 (5)-(6).

Michel, by contrast, will remain sentenced to life in prison, being entitled to review of his sentence after twenty-five years, at a hearing presided over by the parole commission.  He will not have the right to be present, nor will he have the right to be represented by an attorney.  The commission will also not be required to consider the *Miller*[3] factors, nor will Michel have any real opportunity to present evidence in his defense.[4]

---

3. *Miller v. Alabama*, 567 U.S. 460 (2012).

4. The question becomes whether there would ever come a point when Michel could claim that his sentence violates the Eighth Amendment.  Michel is currently forty-three years of age.  He has spent approximately twenty-five years—over half of his life—incarcerated.  Under the reasoning of the plurality opinion, would Michel be entitled to file a postconviction motion challenging his sentence as unconstitutional if he is still incarcerated when he reaches the age of fifty, or sixty, or seventy, challenging the way the parole commission has reviewed his case without considering the factors deemed critical for Eighth Amendment purposes?

Consequently, Michel is left with the distinct possibility that he will spend the rest of his life in prison under a parole system that, as we painstakingly explained in *Atwell*, does not take into consideration any of the constitutionally required *Miller* factors when determining whether a juvenile offender should be released from prison. Because I strongly disagree with the plurality's decision to disregard this Court's well-reasoned opinion in *Atwell*, I dissent.[5]

### *Atwell*—the Controlling Law

The plurality's decision throws this State's juvenile sentencing case law post-*Graham*[6] and *Miller* into a state of chaos by refusing to apply this Court's opinion in *Atwell*, which appellate courts and the State have appropriately observed is the controlling law. While I recognize that this Court is required to construe the Florida Constitution's protection against cruel and unusual punishment in conformity with the United States Constitution, if the United States Supreme Court has not directly addressed the precise issue, this Court is not required to wait until it does so. *See* art. I, § 17, Fla. Const.; *see also Howell v. State*, 133 So. 3d 511, 516 (Fla. 2014) (observing that this Court has, "prior to any directly applicable

---

5. I would strongly urge the Legislature to look at the implications of the plurality's decision to determine whether amendments are warranted to chapter 2014-220, sections 2-3, Laws of Florida. *See* §§ 921.1401, 921.1402, Fla. Stat. (2018).

6. *Graham v. Florida*, 560 U.S. 48 (2010).

- 12 -

precedent from the United States Supreme Court as to the standard for an Eighth Amendment claim based on a challenge . . . addressed [the issue.]") (citing *Sims v. State*, 754 So. 2d 657 (Fla. 2000)).

In *Atwell*, this Court faithfully adhered to the United States Supreme Court's opinions in *Graham* and *Miller*, explaining why, in Florida, a life with parole sentence is the equivalent of a life without parole sentence. *Atwell*, 197 So. 3d at 1048. It is telling that the State did not seek certiorari review of the *Atwell* decision in an attempt to argue that this Court misconstrued the United States Supreme Court's Eighth Amendment jurisprudence.

Traditionally, while the United States Supreme Court has made categorical rules regarding the Eighth Amendment, it has left to the States the "task of developing appropriate ways to enforce the constitutional restriction upon [their] execution of sentences." *Atkins v. Virginia*, 536 U.S. 304, 317 (2002) (alteration in original) (quoting *Ford v. Wainwright*, 477 U.S. 399, 416-17 (2002)). In response to that task, the *Atwell* Court concluded that Florida's parole commission hearings fail to comport with the constitutional requirements of *Miller* and were therefore no longer a viable constitutional option for juvenile sentencing. *Atwell*, 197 So. 3d at 1049. When considering the appropriate remedy for *Miller* violations, this Court concluded that parole hearings were insufficient to comport with the requirements of *Miller*:

Applying chapter 2014-220, Laws of Florida, as a remedy is also faithful to *Miller*. This legislation was enacted in direct response to the Supreme Court's decisions in *Miller* and *Graham*, and it appears to be consistent with the principles articulated in those cases—that juveniles are different as a result of their "diminished culpability and heightened capacity for change"; that individualized consideration is required so that a juvenile's sentence is proportionate to the offense and the offender; and that most juveniles should be provided "some meaningful opportunity" for future release from incarceration if they can demonstrate maturity and rehabilitation. *See Miller*, 132 S. Ct. at 2469.

*Horsley v. State*, 160 So. 3d 393, 406 (Fla. 2015). While the Legislature could have changed the parole system to be compliant with *Miller*, it chose a different route through its enactment of a comprehensive legislative scheme, tailored specifically to juvenile offenders.

## Stare Decisis

By casting *Atwell* aside in favor of its new decision, the plurality also casts aside the principle of stare decisis. The principle of stare decisis "counsels [the Court] to follow [its] precedents unless there has been 'a significant change in circumstances after the adoption of the legal rule, or . . . an error in legal analysis.' " *Valdes v. State*, 3 So. 3d 1067, 1076 (Fla. 2009) (quoting *Rotemi Realty, Inc. v. Act Realty Co.*, 911 So. 2d 1181, 1188 (Fla. 2005)). Nowhere mentioned in the plurality opinion is the test utilized by courts to determine when disregarding precedent is appropriate.

As the United States Supreme Court has explained, the principle of stare decisis "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991). The plurality's holding today does exactly the opposite. For this reason, it cannot overcome the presumption in favor of stare decisis.

The presumption in favor of stare decisis can only be overcome upon consideration of the following factors:

> (1) Has the prior decision proved unworkable due to reliance on an impractical legal "fiction"? (2) Can the rule of law announced in the decision be reversed without serious injustice to those who have relied on it and without serious disruption in the stability of the law? And (3) have the factual premises underlying the decision changed so drastically as to leave the decision's central holding utterly without legal justification?

*Valdes*, 3 So. 3d at 1077 (quoting *Strand v. Escambia Cty.*, 922 So. 2d 150, 159 (Fla. 2008)).

As to the first factor, there is no indication that this Court's decision in *Atwell* has proved unworkable. Indeed, this Court and the district courts of appeal have relied on *Atwell* when deciding juvenile sentencing cases, and extended the holding in *Atwell* to other instances. *See Lecroy v. State*, 41 Fla. L. Weekly S621, 2016 WL 7212336 (Fla. Dec. 13, 2016); *Woods v. State*, 41 Fla. L. Weekly S621, 2016 WL 7217231 (Fla. Dec. 13, 2016); *Rembert v. State*, 41 Fla. L. Weekly S621,

- 15 -

2016 WL 7217265 (Fla. Dec. 13, 2016); *Wallace v. State*, 41 Fla. L. Weekly S621,

2016 WL 7217278 (Fla. Dec. 13, 2016). As the Third District Court of Appeal

explained:

> [W]e read *Atwell* to reject the notion that Florida's current parole
> scheme provides the individualized consideration of a defendant's
> juvenile status required under *Miller*. *See Atwell*, 197 So. 3d at 1042
> ("The current parole process similarly fails to take into account the
> offender's juvenile status at the time of the offense, and effectively
> forces juvenile offenders to serve disproportionate sentences of the
> kind forbidden by *Miller*."); *see also id.* at 1049 ("Parole is, simply
> put, patently inconsistent with the legislative intent as to how to
> comply with *Graham* and *Miller*." (quotation omitted)). Since *Atwell*,
> and applying its holding, we have reversed trial court orders denying
> *Miller* postconviction claims even where, as in Reid's case, the
> presumptive parole release date was within the defendant's lifetime.
> *See, e.g.*, *Carter v. State*, No. 3D16-1090, 2017 WL 1018513, at *1
> (Fla. 3d DCA Mar. 15, 2017) ("Notwithstanding the fact that he will
> be reevaluated for the possibility of parole in 2022, we conclude the
> defendant is correct and that he is entitled to resentencing under
> sections 775.082(3)(c) and 921.1401."); *Miller v. State*, 208 So. 3d
> 834, 835 n.1 (Fla. 3d DCA 2017) ("The State's contention that Miller
> was parole-eligible as early as twelve years after the commission of
> first-degree murder is irrelevant.").
>   We do so here, too. We reverse the trial court's order denying
> Reid's motion for post-conviction relief and remand for a
> resentencing pursuant to section 921.1401.

*Reid v. State*, 42 Fla. L Weekly D1216, 2017 WL 2348615, at *3 (Fla. 3d DCA

May 31, 2017) (footnote omitted).

Additionally, in a different case, the Third District applied this Court's

holding in *Atwell* to conclude that "all juveniles are entitled to judicial review and

resentencing in accordance with the new statutes." *Miller v. State*, 208 So. 3d 834,

- 16 -

834 (Fla. 3d DCA 2017). In reaching that conclusion, the Third District noted that "the State's contention that Miller was parole-eligible as early as twelve years after the commission of first-degree murder is irrelevant." *Id.* at n.1. Though the State initially sought review of that decision in this Court, the State later voluntarily dismissed that review proceeding. *See State v. Miller*, No. SC17-325, 2018 WL 857476 (Fla. Feb. 14, 2018). Accordingly, it appears that neither this Court nor the district courts of appeal have found *Atwell* to be unworkable.

Turning to the second factor required to be considered when determining whether the presumption against stare decisis has been overcome, any contention that *Atwell* could be cast aside without serious injustice or creating instability in the law is belied by this Court and district courts of appeals' reliance on *Atwell* to grant juvenile offenders relief. As previously explained, this relief comes in the form of resentencing under chapter 2014-220, section 3, Laws of Florida, which allows those juvenile offenders to argue for a sentence as low as forty years' imprisonment with the opportunity of judicial review and consideration of the other *Miller* factors. For example, the plurality's decision is patently unfair to Michel. Michel, who was sixteen years old at the time of his crimes, was sentenced to a mandatory life sentence with the possibility of parole after twenty-five years. *See* plurality op. at 2. This is the exact same sentence that we held was

- 17 -

unconstitutional when imposed upon sixteen-year-old Angelo Atwell. *Atwell*, 197 So. 3d at 1041.

Additionally, because district courts have widely relied on this Court's opinion in *Atwell* for guidance, the plurality's decision today creates a serious disruption in the law. Without a full majority with respect to the plurality's legal analysis, it is unclear which portions of the plurality opinion, namely the plurality's decision to disregard *Atwell*, constitute controlling law. As a result, district courts of appeal will be left guessing as to which juvenile defendants should be entitled to relief.

Finally, turning to the third factor, even though the plurality fails to mention the test for when binding precedent can be disregarded, it is clear that it relies heavily on this factor as the basis for refusing to apply *Atwell*. The majority claims that a new case from the United State Supreme Court, *Virginia v. LeBlanc*, 137 S. Ct. 1726 (2017), has so changed the legal landscape as to warrant the extreme injustice and instability that its decision today injects into our juvenile sentencing jurisprudence. As explained in the next section, the plurality's reliance on this factor to support its decision is unconvincing.

**Misplaced Reliance on *LeBlanc***

The United States Supreme Court has not addressed the discrete issue before this Court—whether "relief under *Atwell* is dependent on the juvenile offender's

- 18 -

presumptive parole release date"—regardless of the plurality's assertion to the contrary. *Michel v. State*, 204 So. 3d 101, 101 (Fla. 4th DCA 2016). The plurality asserts that the United States Supreme Court has, in fact, addressed this issue in *LeBlanc*, and this Court is required to conform our jurisprudence accordingly. The plurality claims that *LeBlanc* "clarified that the [*Atwell*] majority's holding does not properly apply United States Supreme Court precedent." Plurality op. at 5. Using this overreliance on *LeBlanc* as a basis to adopt Justice Polston's dissent in *Atwell* is unconvincing.

As this Court has explained, only "Supreme Court pronouncement[s] [that are] *factually and legally* on point with the present case [will] automatically modify the law of Florida." *Smallwood v. State*, 113 So. 3d 724, 730 (Fla. 2013) (last alteration in original) (quoting *State v. Daniel*, 665 So. 2d 1040, 1047 n.10 (Fla. 1995)). Indeed, when a case is "neither factually nor legally on point . . . the conformity clause does not require Florida courts to apply [its] holding." *Id.* A careful reading of *LeBlanc* reveals that the opinion does not stand for the proposition that any life sentence with parole will satisfy the Eighth Amendment.

The posture of *LeBlanc* was that the Virginia Supreme Court had analyzed its own, very different, geriatric release program, and concluded that it satisfied the Eighth Amendment. *LeBlanc*, 137 S. Ct. at 1727-28. The Fourth Circuit Court of Appeals disagreed, concluding that "the state trial court's ruling was an

- 19 -

unreasonable application of *Graham*" and "Virginia's geriatric release program did not provide a meaningful opportunity for juvenile nonhomicide offenders to obtain release." *Id.* at 1728. The United States Supreme Court held only that it "was not objectively unreasonable" for the Virginia Supreme Court to determine that Virginia's program did not violate the Eighth Amendment. *Id.* at 1729. The plurality uses this exceedingly narrow holding as a direct statement regarding United States Supreme Court precedent that *Miller* was never intended to apply to prisoners who are sentenced to life with the possibility of parole in the State of Florida. Plurality op. at 5-6.

However, there are two reasons why the plurality's reliance on *LeBlanc* is misplaced. First, the plurality fails to mention that the United States Supreme Court was considering only whether the Fourth Circuit had improperly intruded on the authority of the Virginia Supreme Court to conclude that its program satisfied the Eighth Amendment. As the *LeBlanc* court explained:

> In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be "objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods v. Donald*, 135 S. Ct. 1372, 1376 (per curiam ) (internal quotation marks omitted). In other words, a litigant must "show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Ibid.* (internal quotation marks omitted). This is "meant to be" a difficult standard to meet. *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

*Id.* at 1728. Accordingly, even if the United States Supreme Court believed that the Virginia Supreme Court's decision was in error, this still would not have been enough to overturn the state court decision. Instead of looking at the *LeBlanc* decision in its proper context through the rigorous standard of review, the plurality uses the United States Supreme Court opinion to adopt the dissent written by Justice Polston in *Atwell*. *See Atwell*, 197 So. 3d at 1050 (Polston, J., dissenting).

In fact, the United States Supreme Court's holding in *LeBlanc* made no mention of this Court's opinion in *Atwell*, nor was it considering a state statute similar to that at issue in this case. Despite the weight the plurality would give the opinion, *LeBlanc* has no precedential value in this instance and does not implicate this Court's requirement to construe our Eighth Amendment jurisprudence in conformance with the United States Supreme Court.

Second, a review of *LeBlanc* demonstrates that Virginia's geriatric release program is entirely different from Florida's parole system. Indeed, the program includes a consideration of many factors such as the " 'individual's history . . . and the individual's conduct . . . during incarceration,' as well as the individual's 'inter-personal relationships with staff and inmates.' " *LeBlanc*, 137 S. Ct. at 1729 (quoting *LeBlanc v. Maithena*, 841 F.3d 256, 280-81 (4th Cir. 2016) (Niemeyer, J., dissenting)). Consideration of these factors could lead to the individual's conditional release in light of his or her "demonstrated maturity and

rehabilitation." *Id.* (quoting *Graham*, 560 U.S. at 75). Florida's parole system, as we explained in *Atwell*, does not—with its primary concern being on the perceived dangerousness of the criminal defendant. Indeed, the Florida Commission on Offender Review's mission statement is "Ensuring public safety and providing victim assistance through the post prison release process." *Fla. Comm'n on Offender Review 2016 Annual Report* (2016), https://www.fcor.state.fl.us/docs/reports/FCORannualreport201516.pdf.

The other cases cited by the plurality in support of its position—*Friedlander v. United States*, 542 F. App'x 576 (9th Cir. 2013); *Lewis v. State*, 428 S.W.3d 860 (Tex. Crim. App. 2014); and *James v. United States*, 59 A.3d 1233 (D.C. 2013)— are likewise unhelpful for three reasons. *See* plurality op. at 8-9. First, and importantly, all of the opinions cited by the majority were decided before the United States Supreme Court issued its opinion in *Montgomery v. Louisiana*, 136 S. Ct. 718 (2016), mandating that *Miller* requires "[a] hearing where 'youth and its attendant characteristics' are considered as sentencing factors . . . to separate those juveniles who may be sentenced to life without parole from those who may not." *Id.* at 735. Such a hearing gives "effect to *Miller*'s substantive holding that life without parole is an excessive sentence for children whose crimes reflect transient immaturity." *Id.* As the Supreme Court clarified in *Montgomery*, and contrary to the decisions cited by the plurality today, *Miller*

did more than require a sentencer to consider a juvenile offender's youth before imposing life without parole; it established that the penological justifications for life without parole collapse in light of "the distinctive attributes of youth." [*Miller*], 132 S. Ct. at 2465. Even if a court considers a child's age before sentencing him or her to a lifetime in prison, that sentence still violates the Eighth Amendment for a child whose crime reflects " 'unfortunate yet transient immaturity.' " 132 S. Ct. at 2469 (quoting *Roper*, 543 U.S., at 573). Because *Miller* determined that sentencing a child to life without parole is excessive for all but " 'the rare juvenile offender whose crime reflects irreparable corruption,' " 132 S. Ct. at 2469 (quoting *Roper*, *supra*, at 573), it rendered life without parole an unconstitutional penalty for "a class of defendants because of their status"—that is, juvenile offenders whose crimes reflect the transient immaturity of youth. *Penry*, 492 U.S. at 330. As a result, *Miller* announced a substantive rule of constitutional law. Like other substantive rules, *Miller* is retroactive because it " 'necessarily carr[ies] a significant risk that a defendant' "—here, the vast majority of juvenile offenders—" 'faces a punishment that the law cannot impose upon him.' " *Schriro*, 542 U.S. at 352 (quoting *Bousley v. United States*, 523 U.S. 614, 620 (1998)).

*Montgomery*, 136 S. Ct. at 734.

Second, each decision adopts an unnecessarily narrow interpretation of *Miller*, which this Court chose not to incorporate into this State's jurisprudence. Indeed, we explained this in *Atwell*, stating that this Court's broader interpretation of *Miller* in that case was

consistent with this Court's precedent involving juvenile sentencing cases that has followed the spirit of the United States Supreme Court's recent juvenile sentencing jurisprudence, rather than an overly narrow interpretation. For example, this Court in *Henry v. State*, 175 So. 3d 675 (Fla. 2015), recently rejected a similarly narrow reading as the one the State offers of *Miller* here, in concluding that the underlying premise of the Supreme Court's related decision in *Graham v. Florida*, 560 U.S. 48 (2010), controlled over a reading that would

have confined the scope of *Graham* to only sentences denominated as "life" imprisonment.

*Atwell*, 197 So. 3d at 1041-42.

Finally, the three cases cited by the plurality are also unpersuasive because each is based on a distinct statutory scheme—the United States Code, the Texas Penal Code, and Washington D.C. criminal law, respectively. As explained in *James*, "under the D.C. code, the D.C. Council and Executive Branch have already considered youth and its attendant factors, by limiting the minimum sentence to thirty years for [juvenile offenders] . . . [and] [i]n this jurisdiction, sentencing is a joint exercise by the legislative, executive, and judicial branches." *James*, 59 A.3d at 1238. Following *Miller*, the Florida Legislature created a new and separate system of judicial review, specific to juveniles. *See* § 921.1402, Fla. Stat. (2017). Again, as this Court explained in *Atwell*, "[i]n *Horsley*, this Court held that the appropriate remedy for any juvenile offender whose sentence is unconstitutional under *Miller* is to apply chapter 2014-220, Laws of Florida—legislation enacted by the Florida Legislature in 2014 to bring Florida's sentencing laws into compliance with the *Graham* and *Miller* decisions." 197 So. 3d at 1045 (citing *Horsley*, 160 So. 3d at 409).

**Florida's Current Parole System Does Not Comport with *Miller***

Turning to the discrete issue before this Court, I would conclude that resentencing juvenile offenders pursuant to chapter 2014-220, section 2, regardless

- 24 -

of whether they currently have a presumptive parole release date, is the constitutionally required solution because Florida's current parole system affords juveniles no *meaningful* opportunity to demonstrate entitlement to release. In *Atwell*, this Court concluded that "Florida's existing parole system, as set forth by statute, does not provide for individualized consideration of Atwell's juvenile status at the time of the murder." 197 So. 3d at 1041. We further explained that Florida's "current parole process . . . fails to take into account the offender's juvenile status at the time of the offense and effectively forces juvenile offenders to serve disproportionate sentences." *Id.* at 1042.

This Court could not have been clearer in its conclusion that "[p]arole is, simply put, 'patently inconsistent with the legislative intent' as to how to comply with *Graham* and *Miller*." *Id.* at 1049 (quoting *Horsley*, 160 So. 3d at 395). As the *Atwell* Court noted, while the Legislature could have chosen "a parole-based approach" to comply with *Miller* and *Graham*, it chose instead to fashion a different remedy of resentencing under a new law, which explicitly considers the *Miller* factors. *Id.*

Specifically, Florida's current parole system does not provide juvenile offenders an opportunity to demonstrate that release is appropriate based on maturity and rehabilitation for several reasons. First, the Commission relies on static, unchanging factors, such as the crimes committed and previous offenses,

when determining whether or not to grant an offender parole. *See* Fla. Admin. Code. R. 23-21.007. Under *Graham*, however, a juvenile's "meaningful opportunity to obtain release [must be] based on demonstrated maturity and rehabilitation." *Graham*, 560 U.S. at 75. Relying on static factors such as the offense committed ignores the focus on the "demonstrated maturity and rehabilitation" that *Graham* and *Miller* require. *Id.*

Second, an inmate seeking parole has no right to be present at the Commission meeting and has no right to an attorney. Although the hearing examiner sees the inmate prior to the hearing, the commissioners do not. Fla. Admin. Code R. 23-21.004(13); 23-21.001(6). Third, there is only a limited opportunity for supporters of the inmate to speak on the inmate's behalf. Fla. Comm'n on Offender Review, *Release and Supervision Frequently Asked Questions*, https://www.fcor.state.fl.us/mediaFactSheet.shtml (last visited April 10, 2018) ("All speakers, in support, must share the allotted 10 minute time frame for speaking. All speakers, in opposition, must share the allotted 10 minute time frame for speaking."). Finally, there is no right to appeal the Commission's decision, absent filing a writ of mandamus. *Armour v. Fla. Parole Comm'n*, 963 So. 2d 305, 307 (Fla. 1st DCA 2007).

By contrast, the new sentencing law affords juvenile offenders the opportunity to argue for a sentence of forty years with judicial review of their

sentences at twenty-five years.  *See* § 775.082(1)(b)1., Fla. Stat. (2017).  This judicial review includes a hearing, where the juvenile is "entitled to be represented by counsel."  § 921.1402(5), Fla. Stat. (2017).  Additionally, a trial court will determine whether the juvenile is entitled to resentencing or early release.  *Id.* § 921.1402(6).  In making that determination, the trial court is required to consider all of the following individualized factors:

> (a)  Whether the juvenile offender demonstrates maturity and rehabilitation.
> (b)  Whether the juvenile offender remains at the same level of risk to society as he or she did at the time of the initial sentencing.
> (c)  The opinion of the victim or the victim's next of kin. The absence of the victim or the victim's next of kin from the sentence review hearing may not be a factor in the determination of the court under this section. The court shall permit the victim or victim's next of kin to be heard, in person, in writing, or by electronic means. If the victim or the victim's next of kin chooses not to participate in the hearing, the court may consider previous statements made by the victim or the victim's next of kin during the trial, initial sentencing phase, or subsequent sentencing review hearings.
> (d)  Whether the juvenile offender was a relatively minor participant in the criminal offense or acted under extreme duress or the domination of another person.
> (e)  Whether the juvenile offender has shown sincere and sustained remorse for the criminal offense.
> (f)  Whether the juvenile offender's age, maturity, and psychological development at the time of the offense affected his or her behavior.
> (g)  Whether the juvenile offender has successfully obtained a high school equivalency diploma or completed another educational, technical, work, vocational, or self-rehabilitation program, if such a program is available.
> (h)  Whether the juvenile offender was a victim of sexual, physical, or emotional abuse before he or she committed the offense.

(i) The results of any mental health assessment, risk assessment, or evaluation of the juvenile offender as to rehabilitation.

*Id.* § 921.1402(6). This process could not be more different from the current parole process.

Necessarily included in this Court's rejection of the parole system in *Atwell* was a rejection of the method used by Florida's parole system to determine a defendant's presumptive parole release date, which virtually guarantees that any sentence with the possibility of parole imposed for first-degree murder will be the practical equivalent of a life sentence. Indeed, when describing how presumptive parole release dates are determined in *Atwell*, this Court explained:

> In most respects, a sentence of life with the possibility of parole for first-degree murder, based on the way Florida's parole process operates under the existing statutory scheme, actually resembles a mandatorily imposed life sentence without parole that is not "proportionate to the offense and the offender." *Horsley*, 160 So. 3d at 406. Based on Florida's objective parole guidelines, an individual who was convicted of a capital offense under section 775.082, Florida Statutes (1990), as Atwell was, will have a presumptive parole release date of anywhere from 300 to 9,998 months in the future. Fla. Admin. Code R. 23-21.009 (2014). Importantly, the statute requires "primary weight" in the consideration of parole to be given "to the seriousness of the offender's present offense"—here, the most serious offense of first-degree murder—"and the offender's past criminal record." § 947.002, Fla. Stat.
>
> If an offender convicted of first-degree murder has a high salient score, that offender's range of months for the presumptive parole release date could span from hundreds of months to nearly ten thousand months. Fla. Admin. Code R. 23-21.009 (2014). This range of months, which encompasses hundreds of years, could be lawfully imposed without the Commission on Offender Review even considering mitigating circumstances. The Commission is only

required to consider mitigating and aggravating circumstances if it wishes to impose a presumptive parole release date that falls outside the given range of months. Fla. Admin. Code R. 23-21.010 (2010). Further, the enumerated mitigating and aggravating circumstances in rule 23-21.010 of the Florida Administrative Code, even if utilized, do not have specific factors tailored to juveniles. In other words, they completely fail to account for *Miller*.

 Using Florida's objective parole guidelines, then, a sentence for first-degree murder under the pre-1994 statute is virtually guaranteed to be just as lengthy as, or the "practical equivalent" of, a life sentence without the possibility of parole. Indeed, that is the case here, with Atwell's presumptive parole release date having recently been set to 140 years in the future.

*Id.* at 1048.

This Court has held that a parolee may not rely on a presumptive parole release date, and there is no constitutional liberty interest attached to a parole date. *Meola v. Dep't of Corr.*, 732 So. 2d 1029, 1034 (Fla. 1998). As amici curiae, the Public Interest Law Center and Florida Juvenile Resentencing and Review Project explain:

The PPRD [presumptive parole release date] date "becomes binding upon the Commission in the sense that, once established, it is not to be changed except for reasons of institutional conduct, acquisition of new information not available at the time of the initial interview, or for good cause in exceptional circumstances." *Florida Parole & Prob. Comm'n v. Paige*, 462 So. 2d at 819; §§ 947.172(1), Fla. Stat. (2016). However, the PPRD does not mean the inmate will be paroled on that date. "Prior to the arrival of this date, inmates are given a final interview and review in order to establish an effective release date after which the Commission must determine 'whether or not to authorize the effective parole release date.'" *Id.* Thus, under Florida's parole system, the PPRD is merely a step towards the possibility of establishing an effective parole release date (EPRD).

A PPRD is neither a reliable metric, nor is it a legal standard; it is not a legal sentence under Florida's Criminal Punishment Code. A PPRD is merely one segment of the Commission's parole process; by definition, the PPRD is only "a tentative parole release date as determined by objective parole guidelines." § 947.005(8), Fla. Stat.

Am. Br. of Pub. Int. L. Ctr. & Fla. Juv. Resent'g & Rev. Project at 8-9.

Accordingly, it would be improper to base constitutional relief on such a fluid calculation.

Indeed, the conflict cases demonstrate this point clearly. As the Fifth District explained in *Stallings v. State*, 198 So. 3d 1081 (Fla. 5th DCA 2016):

In 1999, following a review, the Commission established Appellant's presumptive parole release date as December 11, 1999; however, that release date was suspended as a result of an "Extraordinary Review," which discussed a number of infractions accrued by Appellant during his incarceration. The Commission indicated that another review would be conducted in July 2004. We cannot determine from the record whether the Commission conducted a review in July 2004 and a new presumptive release date was ever calculated, or whether Appellant remains in limbo under the suspended 1999 release date.

*Id.* at 1082. Despite having a presumptive parole release date of 1999, Stallings was still incarcerated in 2016, almost two decades after his initial presumptive parole release date.

Additionally, with respect to the other conflict case, *Williams v. State*, 198 So. 3d 1084 (Fla. 5th DCA 2016), even the Fifth District acknowledged:

What is certain is that, like Atwell, the statutory scheme Williams was sentenced under provided only for the death penalty or life with the possibility of parole after twenty-five years. § 775.082(1), Fla. Stat.

- 30 -

(1988). The trial court was not able to consider factors that would have allowed it to individually tailor Williams' sentence based on his juvenile status. *See Miller*, 132 S. Ct at 2469. As a result, if Williams' PPRD is calculated similarly to Atwell's, he will likely have no hope for release prior to his death, a consequence the United States Supreme Court has determined is unconstitutional. *See id.* (citing *Graham v. Florida*, 560 U.S. 48, 74-75 (2010)).

*Id.* at 1086. Both conflict cases recognize that it is highly unlikely that either juvenile offender would be released from prison during his lifetime. However, under the plurality's reasoning today, even Stallings and Williams, whom the district courts acknowledge could potentially be entitled to resentencing pending the determination of a presumptive parole release date, would now not be entitled to resentencing, regardless of any presumptive parole release date.

## CONCLUSION

For all of the reasons explained above and because our precedent compels such a result, I would conclude that a presumptive parole release date should not be considered when determining whether the constitution entitles a juvenile to resentencing. Specifically, I would not reject *Atwell* and would instead hold that *Atwell*, which faithfully interpreted the United States Supreme Court's decisions, requires that all juvenile offenders sentenced to life with the possibility of parole after twenty-five years be resentenced pursuant to section 921.1401 regardless of a presumptive parole release date, if one has been set. This result would not guarantee Michel any particular term of years sentence less than life but would

- 31 -

require the sentencing court to consider all of the *Miller* factors when resentencing Michel and would allow the sentencing court the discretion to impose a forty-year sentence with an entitlement to judicial review, and all of those benefits previously explained, after twenty-five years from his initial sentencing.

Accordingly, I dissent.

QUINCE and LABARGA, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fourth District - Case No. 4D13-1123

(Broward County)

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, Celia Terenzio, Bureau Chief, and Matthew Steven Ocksrider, Assistant Attorney General, West Palm Beach, Florida,

for Petitioner

Carey Haughwout, Public Defender, and Paul Edward Petillo, Assistant Public Defender, Fifteenth Judicial Circuit, West Palm Beach, Florida,

for Respondent

Paolo Annino, Florida State University College of Law, Tallahassee, Florida, and Roseanne Eckert, Florida International University College of Law, Miami, Florida,

Amici Curiae Public Interest Law Center at the FSU College of Law and the Florida Juvenile Resentencing and Review Project at the FIU College of Law