# DISTRICT COURT OF APPEAL OF FLORIDA
## SECOND DISTRICT

_____

ROBERT D. GARNER,

Appellant,

v.

STATE OF FLORIDA,

Appellee.

No. 2D22-866
_____

March 8, 2024

Appeal from the Circuit Court for Pasco County; Kimberly Campbell, Judge.

Andrea M. Norgard of Norgard, Norgard & Chastang, Bartow, for Appellant.

Ashley Moody, Attorney General, Tallahassee, and Lydon W. Schultz, Assistant Attorney General, Tampa, for Appellee.

SMITH, Judge.

Robert Garner challenges the trial court's order resentencing him to two consecutive life sentences, each with the possibility of parole after twenty-five years, after a jury found him guilty of committing two murders as a juvenile in 1994. Mr. Garner argues that his sentence is unconstitutional under our decision in *Mack v. State*, 313 So. 3d 694, 698 (Fla. 2d DCA 2020). However, because Mr. Garner is entitled to the

possibility of parole after twenty-five years for each of the two homicide offenses, he has been granted a "meaningful opportunity" to be considered for release during his natural life, and thus, his sentences do not violate the Eighth Amendment. We affirm.[1]

## I.

On March 3, 1994, a jury found Mr. Garner guilty of two counts of first-degree murder. The charges arose from a single criminal episode in which Mr. Garner and two others participated in the brutal killing of two elderly victims who were neighbors of Mr. Garner and personally known to him.

After his conviction, the trial court sentenced Mr. Garner to two consecutive life sentences, each with a twenty-five-year mandatory minimum term.[2] Mr. Garner appealed those sentences, which this court affirmed on October 9, 1996, in *Garner v. State*, 683 So. 2d 121 (Fla. 2d DCA 1996) (table decision). Mr. Garner's subsequent postconviction motions were unsuccessful and were denied by the postconviction court.

More than a decade after Mr. Garner's initial sentencing, the United States Supreme Court held, in *Graham v. Florida*, 560 U.S. 48, 75 (2010),

---

[1] We also find no merit in the remaining arguments briefed by Mr. Garner.

[2] For the purposes of parole eligibility and release, "[e]ach mandatory minimum portion of consecutive sentences shall be served consecutively," and an inmate serving a mandatory term of fifteen years or more shall have an initial parole interview no sooner than eighteen months prior to the expiration of the mandatory minimum portion of the sentence. §§ 947.146(6), .16(2)(g)3, Fla. Stat. (2022). On January 22, 2014, Mr. Garner received a letter from the Florida Parole Commission stating that the initial interview to determine his presumptive parole release date would occur six months prior to the expiration of the mandatory minimum portion of his sentence, in July 2041.

that the Eighth Amendment categorically forbids a sentence of life without parole for a juvenile nonhomicide offender. Two years later, in *Miller v. Alabama*, 567 U.S. 460, 479 (2012), the Court held that a sentencing scheme that mandates a juvenile sentence of life without the possibility of parole for all juveniles convicted of homicide likewise violates the Eighth Amendment.

In response to *Graham* and *Miller*, the Florida Legislature adopted chapter 2014-220, Laws of Florida, codified in sections 775.082, 921.1401, and 921.1402, Florida Statutes. *See, e.g.*, *Horsley v. State*, 160 So. 3d 393, 395 (Fla. 2015). Section 775.082(1)(b)1 states that a juvenile convicted of "actually kill[ing]" a victim shall be sentenced to life in prison if the sentencing court deems such a sentence appropriate after conducting a hearing in accordance with section 921.1401, which describes eleven factors a court must consider before sentencing a juvenile to life. A juvenile sentenced to life in prison under the 2014 version of section 775.082(1)(b)1 is entitled to review of his sentence after twenty-five years pursuant to section 921.1402(2)(a).

Roughly two years after the legislature enacted the new juvenile sentencing framework, the Florida Supreme Court in *Atwell v. State*, 197 So. 3d 1040, 1041 (Fla. 2016), *abrogated by State v. Michel*, 257 So. 3d 3, 6 (Fla. 2018), considered the case of a juvenile homicide offender who was sentenced to life in prison under the prior parole process and given a presumptive parole release date in 2130. The *Atwell* court held that parole was " 'patently inconsistent with the legislative intent' as to how to comply with *Graham* and *Miller*" and that the only way to correct Mr. Atwell's sentence was through resentencing "in conformance with chapter 2014–220, Laws of Florida." *Id.* at 1049-50 (quoting *Horsley*, 160 So. 3d at 395).

On June 24, 2016, Mr. Garner filed a "Motion for Postconviction Relief 3.850(a), (1), (b) (2) [sic] Alternatively, Motion to Correct Illegal Sentence 3.800(a)," arguing that his two consecutive life sentences with the possibility of parole after twenty-five years constituted a de facto life sentence and were thus impermissible for a juvenile under *Miller* and *Atwell*. The State conceded that under *Miller* and its progeny, Mr. Garner was entitled to resentencing pursuant to the newly enacted statutory framework.

The postconviction court initially granted Mr. Garner's motion for postconviction relief, but on August 24, 2018, the State filed a "Motion to Reconsider Defendant's Motion for Post-Conviction Relief" based on the Florida Supreme Court's recent decision in *State v. Michel*, 257 So. 3d 3 (Fla. 2018). In *Michel*, the supreme court considered the case of a juvenile convicted of first-degree murder and given a life sentence with the possibility of parole after twenty-five years. *Id.* at 4. The *Michel* court considered a recent decision in which the United States Supreme Court "reversed the Fourth Circuit Court of Appeals and held that a Virginia court's decision affirming a juvenile offender's sentence of life for a nonhomicide crime subject to the possibility of conditional geriatric release was not an unreasonable application of the Supreme Court's case law." *Michel*, 257 So. 3d at 6 (citing *Virginia v. LeBlanc*, 582 U.S. 91, 94-95 (2017)). Relying on the *LeBlanc* ruling, the Florida Supreme Court held that "Michel's sentence does not violate *Graham* or *Miller* because Michel was not sentenced to life without the possibility of parole." *Id.* at 7. The *Michel* court ultimately held that "juvenile offenders' sentences of life with the possibility of parole after 25 years under Florida's parole system" complied with *Graham*'s requirement that juvenile offenders be afforded a "meaningful opportunity" for release and that those juvenile

offenders therefore were "not entitled to resentencing under section 921.1402, Florida Statutes." *Id.* at 8 (citing *LeBlanc*, 582 U.S. at 94-95).

A few months after the State filed its motion to reconsider, the supreme court issued another opinion considering the constitutionality of a juvenile offender's sentence of life with the possibility of parole in *Franklin v. State*, 258 So. 3d 1239 (Fla. 2018). Mr. Franklin was sentenced to three concurrent 1,000-year sentences for armed kidnapping, kidnapping, armed sexual battery, sexual battery, armed robbery, robbery, and aggravated assault committed when he was seventeen; the Parole Commission conducted several parole review hearings and calculated a presumptive parole release date for the year 2352. *Id.* at 1240. The court reiterated its holding that

> Florida's statutory parole process fulfills *Graham*'s requirement that juveniles be given a "meaningful opportunity" to be considered for release during their natural life based upon "normal parole factors," *LeBlanc*, [582 U.S. at 94-95], as it includes initial and subsequent parole reviews based upon individualized considerations before the Florida Parole Commission that are subject to judicial review, *Michel*, 257 So. 3d at 6 (citing §§ 947.16-.174, Fla. Stat.[(2016)]).

*Id.* at 1241. The court acknowledged that the Parole Commission had set Mr. Franklin's presumptive parole release date "far beyond [his] life expectancy" but ultimately held that because "Franklin's sentences include eligibility for parole there is no violation of the categorical rule announced in *Graham*." *Id.* at 1241 (citing *Michel*, 257 So. 3d at 8).

On December 20, 2018, the postconviction court issued an order granting the State's motion to reconsider, vacating its previous order, and denying Mr. Garner's postconviction motion. In that order the postconviction court stated that "[t]he decisions in *Leblanc* [sic], *Michel*, and *Franklin*, support a finding that [Mr. Garner]'s sentence of life

5

imprisonment, with the possibility of parole after 25 years, is not unconstitutional."

Mr. Garner appealed that order to this court. *Garner v. State*, 310 So. 3d 484 (Fla. 2d DCA 2020). We reversed the order and remanded for resentencing, holding that the postconviction court lacked jurisdiction to vacate its previous order based on the State's untimely rehearing motion; we noted, however, that upon remand, the decisional law at the time of resentencing would apply and that "Mr. Garner may still receive the same sentence upon resentencing." *Id.* at 485.

Mr. Garner's resentencing hearing was conducted on December 2, 2021, pursuant to section 921.1401, with the resentencing court considering the eleven factors described therein. Mr. Garner presented testimony from several witnesses including family members and friends, as well as a psychologist who discussed the effects of trauma on a juvenile brain. On March 4, 2022, the court resentenced Mr. Garner to consecutive life sentences, each with the possibility of parole after twenty-five years. The sentences were ordered nunc pro tunc to April 6, 1994. Notably, although the resentencing hearing was conducted pursuant to section 921.1401, Mr. Garner was resentenced with the possibility of parole, not with the possibility of judicial review after twenty-five years under section 921.1402.

## II.

We review de novo the constitutionality of a sentence. *Williams v. State*, 313 So. 3d 788, 790-91 (Fla. 2d DCA 2021) (reviewing juvenile life sentence with the possibility of parole and determining that sentence "is not illegal under the law as it now stands").

In this appeal, Mr. Garner argues that his consecutive life sentences for the two homicides, with the possibility of parole after the

6

completion of both twenty-five-year mandatory minimums, are unconstitutional under our decision in *Mack*. In that case, Mr. Mack, a juvenile, was convicted of a single homicide crime, in addition to nonhomicide crimes, and sentenced to concurrent life sentences for murder and burglary. *Mack*, 313 So. 2d at 695. He was entitled to a sentencing review after twenty-five years under sections 921.1402(2)(a) and 775.082(1)(b) for the murder and burglary. *Id.* As for the consecutive life sentence for the sexual battery, he was entitled to a sentencing review after twenty years under sections 921.1405(2)(d) and 775.082(3)(c). *Id.* The issue before us in *Mack* was the "absence of any penological purpose to be served by [Mr.] Mack's consecutive life sentence for sexual battery and that sentence's nullification of [Mr.] Mack's meaningful opportunity to obtain release from incarceration under his murder and burglary sentences" pursuant to *Graham* and *Miller*. *Id.* at 698. In reversing the consecutive life sentences as unconstitutional, we held that the opportunity for release for the first life sentence after twenty-five years was not "meaningful" as required by *Miller* because Mr. Mack would still be required to serve an additional twenty years on the consecutive life sentence for the sexual battery before the next review. *Id.* at 696. In so holding, we reasoned that the consecutive life sentence for sexual battery, arising from the same criminal episode, served no "penological purpose" and that "[a]s a practical matter, its only effect [was] to eliminate any meaningful opportunity for him to gain release from incarceration under the murder <u>and</u> burglary sentences." *Id.* (emphasis added).

Mr. Garner's case is distinguishable from *Mack* because that case dealt with a juvenile who was resentenced with a review under section 921.1402, while Mr. Garner was resentenced with eligibility for parole.

While we held that Mr. Mack's consecutive sentences eliminated "meaningful opportunity" for release where Mr. Mack was resentenced with a judicial review under section 921.1402, the supreme court has specifically held that "Florida's statutory parole process fulfills *Graham*'s requirement that juveniles be given a 'meaningful opportunity' to be considered for release during their natural life based upon 'normal parole factors.' " *Franklin*, 258 So. 3d at 1241 (emphasis added) (citing *LeBlanc*, 582 U.S. at 94-95). Therefore, under *Franklin,* Mr. Garner's parole-eligible sentences are constitutional.

Moreover, this case is further distinguishable from *Mack* because that case involved a life sentence for a single homicide followed by a consecutive sentence for sexual battery, while, on the other hand, Mr. Garner's case involves consecutive sentences for two homicides. *Graham* drew a marked distinction between nonhomicide offenses and homicide offenses:

> There is a line "between homicide and other serious violent offenses against the individual." *Kennedy* [*v. Louisiana*, 554 U.S. 407, 438 (2008)]. Serious nonhomicide crimes "may be devastating in their harm . . . but 'in terms of moral depravity and of the injury to the person and to the public,' . . . they cannot be compared to murder in their 'severity and irrevocability.' " [*Id.*] (quoting *Coker* [*v. Georgia*, 433 U.S. 584, 598 (1977)] (plurality opinion)). This is because "[l]ife is over for the victim of the murderer," but for the victim of even a very serious nonhomicide crime, "life . . . is not over and normally is not beyond repair." [*Id.*] (plurality opinion). Although an offense like robbery or rape is "a serious crime deserving serious punishment," *Enmund* [*v. Florida*, 458 U.S. 782, 797 (1982)], those crimes differ from homicide crimes in a moral sense.

560 U.S. at 69 (second, third, sixth, seventh alterations in original). Trial courts have broad discretion when sentencing a defendant within the statutory limits. *Apprendi v. New Jersey*, 530 U.S. 466, 481 (2000); *see*

8

*also Hoskins v. State*, 965 So. 2d 1, 18 (Fla. 2007) ("Trial courts are in the best position to observe the unique circumstances of a case and have broad discretion in assigning weight to mitigators.").  And within those statutory limits, homicide offenses may carry harsher sentences than nonhomicide cases.  *See Kennedy*, 554 U.S. at 438 (citing *Enmund*, 458 U.S. at 797) (noting that harsher sentences for homicide offenses were justified due to "the fundamental, moral distinction between" homicide and other offenses).  A juvenile life sentence with the possibility of parole "is not illegal under the law as it now stands."  *Williams*, 313 So. 3d at 790-91.  The United States Supreme Court and the Florida Supreme Court have historically treated nonhomicide cases differently than homicide cases.  *See Graham*, 560 U.S. at 69; *Miller*, 567 U.S. at 473.  So, while the consecutive life sentence for a nonhomicide offense in *Mack* did not serve a penological purpose, Mr. Garner's consecutive life sentence for a second homicide, a uniquely serious offense, does serve this penological purpose.

Similarly, this case is not in conflict with *Hegwood v. State*, 308 So. 3d 647, 648 (Fla. 4th DCA 2020), in which the Fourth District considered the case of a juvenile who committed three murders in 1987 and, after a supreme court remand for resentencing under sections 775.082, 921.1401, and 921.1402, was resentenced to life in prison with a twenty-five-year minimum for each of the murders.  The resentencing court ordered that Mr. Hegwood was not entitled to judicial review under section 921.1402 until he had served seventy-five years.  *Id.*  The Fourth District reversed, holding that the trial court erred when it ordered that the juvenile was not entitled to judicial review until after serving seventy-five years but affirmed the three consecutive life sentences for the three murders, holding that the consecutive life sentences were constitutional

9

under *Miller* and *Michel* where Mr. Hegwood would be provided judicial review after each life sentence. *Id.* at 648-49. Mr. Garner's sentences are compatible with *Hegwood*. Again, unlike Mr. Hegwood, Mr. Garner was not resentenced with judicial review under section 921.1402, but rather was resentenced with the possibility of parole. Although Mr. Garner must complete his entire mandatory sentence before he is eligible for parole review and release (instead of being eligible for review after completion of his first twenty-five-year minimum sentence), Mr. Garner's parole-eligible sentences grant him a "meaningful opportunity" for release, *Franklin*, 258 So. 3d at 1241, and, like Mr. Hegwood's sentences, do not violate the jurisprudence of the United States and Florida Supreme Courts.

### III.

The Florida Supreme Court has made clear that Florida's parole process provides juveniles a "meaningful opportunity" for release during their natural lives and that juvenile life sentences with the possibility of parole are constitutional. Mr. Garner's consecutive life sentences, with the possibility of parole after completion of both twenty-five-year mandatory minimum terms, grant Mr. Garner a "meaningful opportunity" for release in his natural life and are constitutional.

Affirmed.

SILBERMAN and LABRIT, JJ., Concur.

_____

Opinion subject to revision prior to official publication.

10